742 P.2d 1055

**Emma OLIVER, Petitioner,**

v.

**CITY OF ALBUQUERQUE,
Respondent.**

**No. 16802.**

Supreme Court of New Mexico.

Sept. 22, 1987.

Thomas E. Jones, Albuquerque, for petitioner.

Gail Stewart, Asst. City Atty., Albuquerque, for respondent.

## OPINION

SOSA, Senior Justice.

This case is before us on petition for writ of certiorari to the court of appeals, which reversed the trial court's finding in favor of Emma Oliver (petitioner), widow of Lieutenant Charles Oliver of the Albuquerque Fire Department, who died in his sleep at Station House 4 while he and his company were on alert, backing up another company that was attempting to extinguish a two-alarm tanker fire. After reviewing the record, the briefs on appeal, and the petition, we reverse the court of appeals.

## CAUSALITY

The sole issue here is whether the trial court was correct in finding a causal connection between Lt. Oliver's job-induced stress, his heart attack, and his death. The court of appeals concluded: "[I]t was incumbent on plaintiff [petitioner] to estab-lish a causal connection between Lt. Oliver's death and job-induced stress as a medical probability by medical expert testimony." (at 363, 743 P.2d at 119.) The court of appeals correctly stated this proposition, and then concluded "that medical expert testimony satisfies the requirement of [NMSA 1978] Section 52–1–28(B) [ (Repl.Pamp.1987) ] *if the elements of Section 52–1–28(A)(1) and (2) are met."* *Id.* (emphasis added). In other words, the court of appeals held that petitioner had established a causal connection between Lt. Oliver's death and job-induced stress, as she was required to do by Section 52–1–28(B), and then somehow found it necessary to consider whether the "job-induced" stress arose in the course of Lt. Oliver's employment, as required by Section 52–1–28(A).

The court of appeals' reasoning would seem to have gone awry in its analysis of this case. It is only necessary to reach a discussion of subsection (B) of the statute if an employer or insurance carrier "deny (sic) that an alleged disability is a natural and direct result of the accident * * *." In such a situation the worker (or the worker's next of kin, as here) must then prove the "causal connection" between the accident and the disability. If that connection is established, as the court of appeals has conceded in the case before us, then it is pointless to proceed backwards to a determination of the requirements specified in subsection (A) of the statute.

Subsection (A) requires that a worker's disability (Lt. Oliver's death), be causally connected to the worker's injury (Lt. Oliver's heart attack), and that the injury be causally connected to the worker's accident (the stress induced by Lt. Oliver's job, admittedly established by competent evidence at trial). If one concludes, as the court of appeals has done, that there is a causal connection between "Lt. Oliver's death and job-induced stress," it would appear obvious that the requirements of subsection (A) have been met. Yet, the court of appeals launches into a discussion of whether the job-induced stress in fact arose out of and in the course of Lt. Oliver's employment. The court concluded, "While the evidence

suggests some stress as to the occupation of fire fighting in general, it proves nothing as far as Lt. Oliver and, more importantly, it does not establish an identifiable stress at or near the time of his death." *Id.* at 6. Yet, the court quotes with approval the testimony of Dr. Hall, who stated that in his opinion job-related stress caused Lt. Oliver's heart attack (there being no dispute that the heart attack caused Lt. Oliver's death). The two halves of the court of appeals' opinion do not balance. One half concludes that the trial court was correct to find that job-related stress induced Lt. Oliver's heart attack; the other half protests that the evidence "proves nothing as far as Lt. Oliver [is concerned]." *Id.* at 5.

■ Despite the above, we do not base our opinion on the court of appeals' failure to piece together the beginning and end of its opinion. Rather, we base our opinion on an examination of the record and on the trial court's findings of fact and conclusions of law. There was abundant competent evidence to support the trial court's finding that job-related stress, i.e., stress as it related to *Lt. Oliver's* job, induced his heart attack, and that the heart attack caused his death. Where the record in no way rebuts the presumption that a worker's death arose out of his employment, such presumption shall stand. *Ensley v. Grace,* 76 N.M. 691, 417 P.2d 885 (1966).

■ Further, it is well-established that if the worker's injury was the unexpected result of routine performance, or of "a malfunction of the body itself, such as a

* * * tearing [of] a * * * blood vessel, caused or accelerated by doing work required or expected in employment," *Lyon v. Catron County Comm'r,* 81 N.M. 120, 125, 464 P.2d 410, 415 (Ct.App.1969), *cert. denied,* 81 N.M. 140, 464 P.2d 559 (1970), then the workers' compensation statute requirement that an injury arise in the course of employment is satisfied. Here, although Lt. Oliver died in his sleep, he was nonetheless on duty. Judge Garcia's point in his dissenting opinion as to stress occurring even during sleep is well taken. (Dissenting Opinion, at 4.) Finally, where a pre-existing condition, as in Lt. Oliver's case (arteriosclerosis), is aggravated by on-job stress, the statute's requirement as to job-related injury is met. *Herndon v. Albuquerque Pub. Schools,* 92 N.M. 635, 593 P.2d 470 (Ct.App.1978), *Powers v. Riccobene Masonry Const., Inc.,* 97 N.M. 20, 636 P.2d 291 (Ct.App.1980).

The decision of the court of appeals is reversed, and the judgment of the trial court is reinstated in its entirety.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS and RANSOM, JJ., concur.

STOWERS, J., not participating.