906 P.2d 266

**Ofelia LEVARIO, Worker–Appellee,**

v.

**YSIDRO VILLAREAL LABOR AGENCY and Mountain States Mutual Casualty Company, Employer/Insurer–Appellants.**

**No. 15596.**

Court of Appeals of New Mexico.

Oct. 24, 1995.

Henry J. Baca, Las Cruces, for Worker–Appellee.

Leonard J. Piazza, Sager, Curran, Sturges & Tepper, P.C., Las Cruces, for Employer/Insurer–Appellants.

## OPINION

WECHSLER, Judge.

Employer appeals from the compensation order determining Worker's entitlement to permanent partial disability benefits under the Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp.1995) (the Act). The issues on appeal are whether the Workers' Compensation Judge (WCJ) erred in: (1) applying Section 52–1–26.4 (physical capacity modification); (2) finding that a causal connection was established between Worker's shoulder impairment and her work-related accident; and (3) applying Section 52–1–26.2 (age modification). We affirm.

### Facts

Worker was employed as an onion sorter at the time of her accident. She slipped on an onion on June 27, 1992, while in the course and scope of her employment. Employer received the requisite written notice of Worker's accident.

The amendments to the Act effective after January 1, 1991, govern Worker's entitlement to benefits. *See* § 52–1–48. Under Sections 52–1–26 to 52–1–26.4, if a worker, after reaching maximum medical improvement (MMI), earns less than his or her pre-injury wage, the worker's permanent partial disability is determined by first calculating the worker's impairment, *see* § 52–1–24(A) (defining impairment), and then adding a percentage based on age, education, and physical-capacity modifications.

Worker was forty-four years old when she reached MMI and forty-five years old at the time of the hearing that resulted in the compensation order. The WCJ found that Worker injured her ankle, back, and shoulder in the accident.

Worker was employed seasonally as an onion sorter from 1990 to 1992. Her duties included standing by a conveyor belt, putting non-marketable onions into a burlap bag, picking up onions from the floor and placing

them into twenty-five-pound bags, and lifting and carrying twenty-five-pound bags to the stacker about twenty times a day. In addition to her seasonal employment with Employer, Worker had another seasonal job as a pine-seed sorter for Plant Propagation Technologies from 1990 to 1992. This job required lifting seedlings weighing approximately one ounce and occasionally lifting a twelve-pound block of pine seedlings.

From 1986 to 1992, Worker was also employed seasonally with Joy Canning as a green chile sorter. Worker stood by a conveyor and separated mild green chile according to grade and color. She did not lift anything heavier than one green chile. The Pancake Alley Restaurant employed Worker as a dishwasher from 1987 to 1989. In this position, Worker occasionally carried dish tubs that weighed approximately twenty to twenty-five pounds. Typically, Worker lifted dishwasher trays weighing between six and twelve pounds.

From 1980 to 1987, Worker was employed as a maid for the Royal House Motel. This job required her to clean rooms, make beds, and fold and carry linens. Worker testified that she moved dressers that weighed more than fifty pounds, pushed a linen cart that weighed more than fifty pounds, and occasionally turned mattresses that weighed more than twenty-five pounds.

Based on the foregoing, the WCJ determined that Worker is permanently partially disabled and, after reaching MMI, unable to return to work at a wage equal to or greater than Worker's pre-injury wage. The WCJ found Worker's pre-injury physical capacity to be "heavy," and Worker's residual physical capacity to be "sedentary." *See* § 52–1–26.4(B), (C) (physical capacity modification). The WCJ further determined that Worker was forty-five years old at the time of the disability rating, *see* § 52–1–26.2(B)(2) (age modification), and that Worker had a fifth-grade education. *See* § 52–1–26.3(B)(1) (education modification).

### I. *Physical Capacity Modification*

Section 52–1–26.4(B) provides that "[t]he award of points to a worker shall be based upon the difference between the physical capacity necessary to perform the worker's *usual and customary* work and the worker's residual physical capacity." (Emphasis added.) "Usual and customary" work is characterized as "heavy" when a worker lifts "over fifty pounds occasionally or up to fifty pounds frequently." Section 52–1–26.4(C)(1).

Employer contends that the WCJ erred in considering Worker's employment history of a motel maid and dishwasher in classifying Worker's usual and customary work. Employer argues that the WCJ should have considered only Worker's employment as an agricultural sorter, the employment Worker held during the three years before the accident.

"Usual and customary" is not defined in the applicable provisions of the Workers' Compensation Act. Accordingly, we presume that the legislature intended the ordinary and common meanings of these words to apply. *See, e.g., Whitely v. New Mexico State Personnel Bd.*, 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993); *State v. Ruffins*, 109 N.M. 668, 671, 789 P.2d 616, 619 (1990). For guidance, we turn to *Black's Law Dictionary* 1544 (6th ed. 1990), which defines "usual" as "commonly established, observed, or practiced" and "[t]hat which happens in common use or occurs in ordinary practice or course of events." "Customary" is defined as "[a]ccording to custom or usage; founded on, or growing out of, or dependent on, a custom." *Id.* at 385.

We decline to interpret "usual and customary" as narrowly as Employer requests. Section 52–1–26.4 does not set forth any definite time frame for considering an applicable employment history, and we do not believe it appropriate to adopt a rigid time frame or rule. *Cf.* § 52–1–26.3(C) (skills may be measured by reviewing jobs in the ten years preceding the disability determination); *see also Dona Ana Sav. & Loan Ass'n v. Dofflemeyer*, 115 N.M. 590, 594, 855 P.2d 1054, 1058 (1993) ("courts not permitted to read into statute language that is not there, especially when statute makes sense as written") (citing *State ex rel. Barela v. New Mexico State Bd. of Educ.*, 80 N.M. 220, 222, 453 P.2d 583, 585 (1969)). By negative inference,

unlike Section 52–1–26.3(C) (ten years for skills), Section 52–1–26.4 does not limit the WCJ to any particular time frame, whether it be three years or ten years. *See, e.g., State v. Lucero,* 114 N.M. 460, 462, 840 P.2d 607, 609 (Ct.App.1992) ("When there are provisions in analogous statutes that a party contends should be present in the statute at issue in the case, we utilize the process of negative inference to reason that the absence of such provisions in the statute at issue is intentional.").

Although guidance from other jurisdictions is necessarily limited because of the uniqueness of the New Mexico Workers' Compensation Act, we note that other courts generally have not adopted a narrow interpretation of the terms "usual and customary." *See, e.g., Beckman v. John Morrell & Co.,* 462 N.W.2d 505, 508 (S.D.1990) ("A person's usual and customary line of employment may be determined by such factors as the skills or abilities of the person, the length of time the person has spent in the type of work, the proportion of time the person has spent in the type of work when compared to the worker's entire working career, and the duties and responsibilities of the person at the work place."); *Smith v. Industrial Comm'n,* 735 P.2d 921, 923 (Colo.Ct.App.1986) (noting that Colorado regulations provide that workers are deemed permanently precluded from engaging in their usual and customary occupation when they are unable to perform work for which they have previous training or experience); *Vasquez v. Workers' Compensation Appeals Bd.,* 226 Cal.App.3d 867, 277 Cal.Rptr. 102, 106 (1991) (recognizing a distinction between a worker's usual and customary occupation and the position in which the worker was engaged at the time of the injury) (rev. denied Mar. 20, 1991).

■ We follow the lead of South Dakota, Colorado, and California, and hold that "usual and customary" work is not limited to the job held by the worker at the time of injury, or to the worker's job within a specific time frame. *Cf. Folz v. State,* 110 N.M. 457, 462 n. 3, 797 P.2d 246, 251 n. 3 (1990) ("[W]hen the legislature does not provide an express definition of an essential statutory term, it must be assumed that the legislature was aware of the construction given that term in the judicial decisions of other jurisdictions."). Rather, we take a broader view of the statute and conclude that it is the WCJ's prerogative, as fact finder, to consider, within reason and practicality, a worker's entire work history and experience in order to determine what is a worker's "usual and customary" work. *See, e.g., Lopez v. Employment Sec. Div.,* 111 N.M. 104, 106, 802 P.2d 9, 11 (1990) ("Enactments of the legislature are to be interpreted to accord with common sense and reason.").

■ We analyze this case under the whole record standard of review, as we would all workers' compensation cases. *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). In applying whole record review, this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder. *Id.* at 128, 767 P.2d at 367. As mentioned earlier, testimony was presented that Worker's employment history includes frequently lifting objects weighing twenty-five pounds and occasionally moving objects weighing more than fifty pounds.

We note that Worker's longest employment, from 1980 to 1987, was as a motel maid and that Worker was employed as a motel maid until five years prior to her employment as an onion sorter. A review of Worker's employment experience reveals that she has always worked as an unskilled laborer. Although Worker's current and most recent employment has been as a seasonal worker, Worker may not always be in a situation where she works seasonally, as opposed to year-round, or in a place where seasonal work is even available. Unlike an individual who previously worked as a heavy laborer and then underwent a fundamental career change to become a professional, Worker has not undergone such change. Worker's jobs and experience have consistently involved unskilled labor.

■ Based on the evidence presented, we affirm the WCJ's determination that Work-

er's usual and customary work was "heavy." *See* § 52–1–26.4(C)(1). Although the motel owner testified that the maids did not move the mattresses and room furniture unassisted, Worker testified that she moved dressers weighing more than fifty pounds, sometimes with assistance and sometimes alone. *See Montano v. Saavedra*, 70 N.M. 332, 336, 373 P.2d 824, 826 (1962) (it is the fact finder's prerogative to determine the weight and credibility to be given to testimony).

### II. Causal Connection Between Shoulder Injury and Accident

■ The WCJ found that, as a direct result of Worker's June 27, 1992 work-related accident, Worker suffered an injury to her right ankle, left shoulder, and lower back. Because Employer disputed that Worker's shoulder impairment was a natural and direct result of the accident, Worker had to establish by expert testimony of a health care provider that the shoulder impairment was causally related to the accident. *See* § 52–1–28(B); *Oliver v. City of Albuquerque*, 106 N.M. 350, 351, 742 P.2d 1055, 1056 (1987); *cf. Ross v. Sayers Well Servicing Co.*, 76 N.M. 321, 326, 414 P.2d 679, 683 (1966) (when causal connection has been denied and when medical opinion based on the facts has been expressed and is uncontradicted, the evidence is conclusive upon the fact finder).

■ Dr. Wayne Watson was the sole health care provider to testify on causation. In response to a question on direct examination of whether he could say to a reasonable degree of medical probability that Worker sustained any permanent impairment to her left shoulder as a result of the June 27, 1992 accident, Watson testified that he felt that Worker had "a prehistory of problems in that left shoulder that had led to *a lot of* the condition it was in." (Emphasis added.) When asked the question on cross-examination, he stated: "Well, I am very doubtful. There are impairments to the shoulder. The shoulder has serious problems, but I'm very doubtful about how this shoulder could have been injured. And I have concerns about *some of* the pre-existing components of that shoulder condition when I saw it." (Emphasis added.) He later responded to a similar

question by stating that, "as I said earlier, I'm extremely doubtful that the permanent changes in that shoulder derive from *a single episode* of straining, particularly based on the profound changes in the joint at the time I initially saw her." (Emphasis added.) Dr. Watson reviewed the medical records from a prior health care provider that stated that during her fall, Worker "grasped a nearby employee with her outstretched left arm and suffered some type of downward traction strain on her left arm." He further stated that he did not feel that Worker attempted "to involve unrelated complaints." He also testified that "30 to 40 percent [of the shoulder condition] is likely the remnant of her injury, if any, whether by means of aggravation or otherwise."

Dr. Watson was not required to state his opinion in "positive, dogmatic language or in the exact language of the statute." *Gammon v. Ebasco Corp.*, 74 N.M. 789, 794, 399 P.2d 279, 282 (1965). The sense of his testimony had to reasonably connote the statutory requirement. *Id.* When viewed in its entirety, we believe that it did. The doctor did not directly respond to the questions on causal connection. However, in expressing his concern about the serious pre-existing condition of Worker's shoulder, he qualified his testimony in such a manner that could reasonably have permitted the WCJ to conclude that there was a causal connection between a portion of Worker's shoulder impairment and her work-related accident. This conclusion comports with Dr. Watson having assigned only a small percentage impairment to Worker's shoulder as related to her work injury even though he found that the shoulder had serious problems.

■ Generally, when there is conflicting medical testimony concerning causation, the reviewing court will defer to the finder of fact. *Herman v. Miners' Hosp.*, 111 N.M. 550, 552–53, 807 P.2d 734, 736–37 (1991); *Bufalino v. Safeway Stores, Inc.*, 98 N.M. 560, 565, 650 P.2d 844, 849 (Ct.App.1982). We do not see any reason to apply a different standard when a conflict may exist in the testimony of a single medical expert. *Cf. Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71–72, 716 P.2d 645, 649–50 (Ct.App.1986)

("Conflicts in the evidence, even in the testimony of a single witness, present a fact question for the [trier of fact] to decide."); *Sanchez v. Siemens Transmission Sys.,* 112 N.M. 236, 238, 814 P.2d 104, 106 (Ct.App.) ("To the extent that [a doctor's] testimony ... can be read as ambiguous or inconclusive, ... it is the WCJ's prerogative to determine the weight to be given to the ... testimony."), *rev'd on other grounds,* 112 N.M. 533, 817 P.2d 726 (1991).

### III. *Age Modification*

■ Section 52–1–26.2(A) provides that "[t]he modification is based upon the worker's age at the time of the disability rating." When a party disputes the rating, the WCJ determines the rating and sets forth findings of fact and conclusions of law. Section 52–5–7(A), (B) (Cum.Supp.1995).

Employer argues that basing the age modification on the time of the hearing or compensation order is unfair and impractical. Specifically, Employer notes that a worker who is about to turn forty-five, fifty, fifty-five, or sixty would benefit enormously by having scheduled trials vacated until after the worker has a birthday, thereby gaining an additional modification point. However, a workers' compensation judge has discretion to vacate a trial, and we are confident that a judge would take any actions necessary to prevent a worker from engaging in an unfair tactical ploy. There is no claim that Worker in this case engaged in unfair tactics.

Employer contends that Worker's age modification points should be based on Worker's age on the date she reached MMI, because the date of MMI is the date: (1) the treating physician, as an objective party, assigns the worker an impairment rating; (2) temporary total disability benefits cease and partial disability benefits begin; and (3) the insurance carrier uses in assigning age modification points. Employer's interpretation is not supported by the statutory language. The date of "maximum medical improvement" is specifically defined in the Workers' Compensation Act. Section 52–1–24.1. The definition neither provides nor implies that the date of MMI is the date of a judicial determination of the disability rating. *See* *id.; see also Dona Ana Sav. & Loan Ass'n,* 115 N.M. at 594, 855 P.2d at 1058 ("courts not permitted to read into statute language that is not there").

We also note that Section 52–1–26(D) provides:

D. If, on or after the date of maximum medical improvement, an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his impairment and shall not be subject to the modifications calculated pursuant to Sections 52–1–26.1 through 52–1–26.4 NMSA 1978.

This statutory language demonstrates that the legislature contemplated a permanent partial disability rating after the date of MMI as defined in the Workers' Compensation Act. We further note that there is no provision in the Act specifically designating the date an employer or insurance carrier should use to assign age modification points. We agree with Employer that an insurance carrier may assign a disability rating which, if undisputed, determines benefits. In the event of a dispute, however, the disability rating is determined anew by the WCJ.

The WCJ correctly awarded Worker one point because Worker was forty-five years old at the time the WCJ made the disability rating. *See* § 52–1–26.2(B)(2) (one point awarded for age forty-five to forty-nine).

### *Conclusion*

For the foregoing reasons, we affirm the WCJ's determination that Worker's "usual and customary" work was "heavy," that Worker's shoulder injury is causally related to her work-related accident, and that Worker is entitled to one age modification point. We grant Worker her costs and attorney fees for this appeal and remand to the WCJ to determine the amount.

**IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.