This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOHNNY A. HERRERA,**

Worker-Appellant,

v.                                                    **NO. 28,577**

**EBERLINE SERVICES AND**
**COMMERCE & INDUSTRY**
**INSURANCE COMPANY,**

Employer/Insurer-Appellees

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Helen L. Stirling, District Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Hoffman Kelley LLP
Michelle D. Lopez
McKinney, TX

for Appellees

**MEMORANDUM OPINION**

**FRY, Judge.**

Worker challenges numerous findings of the WCJ, including the implicit finding that Worker has a 0% impairment. We conclude that the whole record does

not support a 0% impairment rating and remand for determination of Worker's impairment based on the evidence presented at trial. We also hold that the WCJ may reconsider the rulings related to the admissibility of Dr. Belle's and Dr. Elliott's testimony and the credibility of Dr. Ziomek to the extent the testimony of these experts relates to the impairment rating. We affirm the WCJ's rulings on all other issues raised in this appeal.

**BACKGROUND**

Worker appealed the WCJ's compensation order to this Court, and we dismissed the appeal due to the absence of a final order. The Supreme Court granted certiorari and interpreted the WCJ's order to include an implied finding of 0% impairment. The appeal is now before us on remand from the Supreme Court.

The parties are familiar with the relevant facts and, because this is a memorandum opinion, we do not provide a detailed recitation of the evidence and the proceedings before the WCJ. We refer to the evidence as necessary in our discussion of the issues below.

**DISCUSSION**

**The Record Does Not Support the Implied Finding of 0% Impairment**

Worker contends that the whole record does not support a finding of 0% impairment. Employer/Insurer does not address the finding implied by the Supreme

Court and instead argues that the record supports Dr. Riley's impairment rating of 17%. The Supreme Court's determination implying a finding of 0% impairment is the law of the case, and we are bound by it. *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816 (explaining that law of the case doctrine provides that "a decision by an appeals court on an issue of law made in one stage of a lawsuit becomes binding on subsequent trial courts as well as subsequent appeals courts during the course of that litigation").

"We review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. "In applying whole record review, this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder." *Levario v. Ysidro Villareal Labor Agency*, 120 N.M. 734, 737, 906 P.2d 266, 269 (Ct. App. 1995).

Employing this standard, we conclude that the record does not support the implied finding of 0% impairment. Both physicians whose testimony was deemed admissible opined that Worker was impaired to some degree, and the WCJ also found that Worker had an impairment. Therefore, there is no evidence supporting a finding of 0% impairment.

Worker asks us to conclude that Dr. Ziomek's impairment rating of 43% is the appropriate rating for two reasons: (1) the uncontradicted medical evidence rule should apply and (2) the record does not support the WCJ's determination that Dr. Ziomek's opinion was not credible. We reject Worker's argument regarding the uncontradicted medical evidence rule and, for reasons we explain below, we leave the determination of Dr. Ziomek's credibility to the WCJ on remand.

Worker urges us to adopt Dr. Ziomek's impairment rating through application of the so-called uncontradicted medical evidence rule, "which dictates that where expert medical testimony regarding the causal connection between disability and accident in a workers' compensation case is uncontroverted, that testimony is binding on the trier of fact." *Romero v. City of Santa Fe*, 2006-NMCA-055, ¶ 26, 139 N.M. 440, 134 P.3d 131 (internal quotation marks and citation omitted). We decline Worker's invitation. "The uncontroverted medical evidence rule applies to issues of causation," *id.*, and the question of the degree of impairment is not a causation issue.

Worker contends that the WCJ erroneously found that Dr. Ziomek's impairment opinion was not credible. We decline to review this question and instead remand the issue for consideration by the WCJ. The WCJ who originally assessed the credibility of Dr. Ziomek's opinion is no longer a WCJ and, as a result, this case will be considered by a different WCJ on remand. While it is undisputed that Worker was

4

impaired at the time of trial, the entire issue of the degree of that impairment remains unresolved and the subject of considerable confusion due to the prior WCJ's rulings on admissibility and credibility. Because we are reversing the implied finding of 0% impairment, we think the entire issue should be freshly considered by the replacement WCJ. The physicians' testimony is entirely in deposition form, so the prior WCJ had no advantage over the new WCJ, such as the ability to observe the demeanor of the witnesses. *Cf. Martinez v. Universal Constructors, Inc.*, 83 N.M. 283, 284, 491 P.2d 171, 172 (Ct. App. 1971) (observing that an appellate court may weigh evidence that is substantially documentary).

In addition to making his/her own determination of Dr. Ziomek's credibility, the WCJ on remand may also reconsider the prior WCJ's exclusion of the depositions of Dr. Elliott and Dr. Belle, but only to the extent that either of them testified regarding Worker's impairment rating. The prior WCJ excluded these depositions on the ground that neither doctor was referred by an authorized health care provider. Given Dr. Riley's deferral to Dr. Elliott's assessment of impairment and Dr. Belle's having been referred by Dr. Elliott, the WCJ on remand should consider anew whether these depositions should be admitted for purposes of assessing Worker's impairment rating. In light of our holding, we need not consider Worker's issue on appeal related to the exclusion of Dr. Belle's testimony.

**The Record Supports Dr. Riley's Assessment of Residual Physical Capacity and His Determination of Worker's Need for Oxygen**

Worker challenges the WCJ's findings adopting Dr. Riley's assessment of Worker's residual physical capacity and giving Dr. Riley, rather than Dr. Ziomek, the responsibility of determining Worker's need for supplemental oxygen. We again employ the whole record standard of review to determine whether the evidence supports these findings.

The WCJ found that Worker was capable of performing light duty work and rejected Worker's requested finding that he is capable of only sedentary work. Although Dr. Ziomek opined that Worker should be restricted to sedentary duty, Dr. Riley concluded that Worker could perform light duty work. Consequently, the record supports the WCJ's finding. *See Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 (explaining that "[w]here the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact" (internal quotation marks and citation omitted)).

Worker argues that Dr. Ziomek treated him more than any other doctor and that Dr. Riley did not accurately report Worker's history and was inconsistent in directing Worker to use and discontinue use of supplemental oxygen. Thus, in effect, Worker asks us to assess the relative credibility of these two physicians. This is not our role;

it is the role of the WCJ. *See Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926 (explaining that it is for the WCJ to determine the weight and credibility of testimony). Employer/Insurer offers plausible reasons for Dr. Riley's reporting of Worker's history and for his assessment of Worker's need for supplemental oxygen. We see no basis on which to second-guess the WCJ's finding.

For the same reasons, we conclude that the record supports the WCJ's assigning to Dr. Riley the responsibility for determining Worker's need for supplemental oxygen. Dr. Riley described the various tests he performed to determine Worker's need for supplemental oxygen and noted that sometimes a patient's perceived need for oxygen is subjective. He further stated that dependence on oxygen "may . . . hinder[] his rehabilitation" and suggested that Worker try to discontinue the oxygen. While Dr. Ziomek did not agree with Dr. Riley in every respect, he agreed with Dr. Riley that Worker did not need supplemental oxygen when he was sedentary. Thus, the record supports the WCJ's finding.

**The WCJ Did Not Err in Refusing to Award Worker a 10% Increase in Benefits**

Pursuant to NMSA 1978, Section 52-1-10(B) (1989), Worker sought a 10% increase in benefits due to his employer's failure to provide him with a safety device. He suggested three different safety devices that should have been provided to

him—(1) material safety data sheets, (2) an integrated work document, and (3) a respirator. On appeal, he asserts only that a respirator was a required safety device.

Section 52-1-10 provides:

> B.     In case an injury to, or death of, a worker results from the failure of an employer to provide safety devices required by law or, in any industry in which safety devices are not prescribed by statute, if an injury to, or death of, a worker results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the worker, then the compensation otherwise payable under the Workers' Compensation Act shall be increased ten percent.

Worker does not argue that a respirator is required by law. Therefore, the question is whether Employer negligently "fail[ed] to supply reasonable safety devices in general use." *Id.* The question of whether a respirator was a reasonable safety device in general use is a question of fact subject to whole record review. *Martinez v. Zia Co.*, 100 N.M. 8, 11, 664 P.2d 1021, 1024 (Ct. App. 1983).

Worker's supervisor, Bruce Baumgartner, testified that on the day in question, he and Worker were called to a site to respond to a report of oil leaking from a cabinet outside a storage shed. They were to inventory the containers in the cabinets and arrange for their disposal. They found two five-gallon plastic buckets with labels indicating that they contained wall joint compound, plus the handwritten notation, "chlorine." Baumgartner knew that the buckets could not contain chlorine, which is a gas, and he also knew that the facility used pool chlorine. Baumgartner opened one

9

of the buckets "outside in the wide open," saw that the bucket contained what looked like granular pool chlorine, detected the odor of chlorine, and closed the bucket.

Baumgartner further testified that a respirator was not required for the inventory in question because he and Worker were dealing with closed containers, for the most part. In order for a respirator to be required, they would have had to be exposed to chlorine dust; because they would not be handling the chlorine, there would be no dust. When Baumgartner opened the lid of the bucket, there was no dust, and he would not have expected there to be dust. This was consistent with Worker's Exhibit 6.1, which indicated that a respirator should be worn when working with granulated chlorine "if dusts are created." Although Baumgartner testified on cross-examination that a respirator would be a reasonable safety device if a person is opening up containers of unknown substances, Worker's job was to inventory the containers in the cabinets, not to open them. If he did not know what was inside a container, he would need to back off and find a safe way to determine the contents.

This evidence supports the WCJ's finding that Employer/Insurer did not negligently fail to provide Worker with a safety device. *See Levario*, 120 N.M. at 737, 906 P.2d at 269 (noting that in applying whole record review, we "determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder").

10

**The WCJ Did Not Err in Rejecting Worker's Claim of Occupational Disease**

Worker claimed that he was permanently and totally disabled due to an occupational disease. The WCJ disagreed, and Worker appeals that determination.

Pursuant to NMSA 1978, Section 52-3-33 (1973),

> "occupational disease" includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease due to, or attributable to, exposure to or contact with any radioactive material by an employee in the course of his employment

(internal quotation marks omitted). Case law establishes that such a disease "must have its origin in the inherent nature or mode of work of the profession or industry." *Cisneros v. Molycorp, Inc.*, 107 N.M. 788, 791, 765 P.2d 761, 764 (Ct. App. 1988). By contrast, with some exceptions not applicable here, an injury is compensable under the Workers' Compensation Act only if it is "an accidental injury arising out of and in the course of his employment." *Id.* at 790, 765 P.2d at 763 (internal quotation marks and citation omitted). "[T]he only requirement for an injury to be found accidental in New Mexico is that it must not be foreseeable." *Id.* at 792, 765 P.2d at 765.

Worker argues that his lung condition is related to his exposure to chlorine on April 29, 2005, and that it was foreseeable that a waste management coordinator such

11

as he "could develop a lung disease after an exposure to hazardous waste." We are not persuaded.

The WCJ found that Worker's exposure on the day in question was accidental, i.e., not foreseeable, and evidence in the whole record supports this finding. Worker's job that day was to inventory containers in three cabinets and determine how many items were needed for packaging the containers for disposal. There was no reason to open any containers because Worker and Baumgartner were not going to be doing any sampling. Baumgartner did not expect that they would be exposed to any chemicals in the process. Although Baumgartner did open one container to determine which of its labels—wall joint compound or chlorine—was accurate, he did not expect the contents to be hazardous. If the container held chlorine rather than wall joint compound, Baumgartner expected it to be solid, granular pool chlorine. He did not expect that there would be any dust, and there was none when he opened the lid.

This testimony supports the WCJ's determination that Worker's exposure to a chemical was not foreseeable and was therefore accidental. There was no expectation of contact with any hazardous material that day, and even the exposure to the chlorine was not anticipated, given the inventory nature of the job to be performed. Worker was entitled to recover for an accidental injury under the Workers' Compensation Act, not a disease under the Occupational Disease and Disablement Law.

12

**CONCLUSION**

For the foregoing reasons, we reverse the implicit finding of 0% impairment and remand for the WCJ to (1) reconsider the admissibility of the testimony of Drs. Belle and Elliott on this issue, (2) reconsider the assessment of Dr. Ziomek's credibility on this issue, and (3) determine Worker's impairment rating based on the evidence the WCJ deems to be admissible and credible. We affirm the compensation order with respect to all other issues raised by Worker on appeal.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**LINDA M. VANZI, Judge**

13