This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**FILIBERTO ARAGON,**

      Worker-Appellant,

v.                              **No. A-1-CA-35034**

**WILSON & CO., INC. and
ZURICH AMERICAN
INSURANCE CO.,**

      Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Shanon S. Riley, Workers' Compensation Judge**

James Rawley
Albuquerque, NM

for Appellant

Hale & Dixon, P.C.
Timothy S. Hale
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}**    Filiberto Aragon (Worker) appeals from the Workers' Compensation Administration's (WCA) June 11, 2015, compensation order and from the Workers' Compensation Judge's (WCJ) decision that the WCA lacked jurisdiction to grant Worker a partial lump sum award to pay attorney fees following the issuance of the compensation order. On appeal, Worker claims three errors: (1) that the WCJ's determination of Worker's date of maximum medical improvement (MMI) was not supported by substantial evidence; (2) that the WCJ should have allowed him to present evidence in support of an impairment rating for a secondary mental impairment of

depression; and (3) that the WCJ incorrectly determined that the WCA lacked jurisdiction to rule on Worker's second petition for a partial lump sum award (Second Petition) to pay attorney fees following the June 2015 compensation order. We affirm.

**BACKGROUND**

**{2}** Worker was employed by Wilson & Company, Inc. (Employer), which was insured for workers' compensation purposes by Zurich American Insurance Company (Insurer). On October 20, 2011, Worker suffered a work-related injury when he was knocked off a truck. Worker initially sought treatment with Drs. Gayle Riley and Carlos Esparza. Eventually, on November 20, 2012, Worker filed a petition for lump sum payment for debts (First Petition), requesting a lump sum advance of weekly compensation benefits in the amount of $9,588.63. Worker, who filed the First Petition pro se, verified that his MMI date was July 24, 2012, the date determined by Dr. Esparza.

**{3}** The WCJ held a hearing on the First Petition on December 19, 2012. During the hearing, the WCJ informed Worker that any lump sum he received would decrease any future indemnity that Employer/Insurer would pay him, meaning he would eventually receive less money over time. In response to Worker's query as to whether his weekly benefits would decrease if he were to receive the partial lump sum award, the WCJ stated that Worker's weekly benefits would stop sooner than they would have otherwise. The WCJ affirmatively confirmed with Worker that he understood that and still wanted the lump sum payment. The next day, the WCJ entered the order approving petition for lump sum payment/settlement, prepared in the form approved by the WCA. The WCJ noted in the order that the lump sum "represent[ed] 36.44 weeks of indemnity benefits[,]" and that Worker had "400.76 weeks" of indemnity benefits remaining.

**{4}** On July 24, 2013, Worker—by then represented by counsel—filed a complaint with the WCA seeking permanent partial disability benefits, attorney fees, benefits for a secondary mental impairment, and an independent medical examination (IME) for "severe groin pain." Following mediation, which resulted in a recommended resolution that Worker rejected, the matter was set for a formal hearing, which was held on March 27, 2015. Worker testified at the hearing, and the depositions of Drs. Riley and Esparza, along with that of physical therapist Stella Avena, were admitted into evidence.[1] Worker also underwent an independent psychological evaluation (IPE) by Dr. Birgitta Gabel, Ph.D., in November 2014, whose report was admitted into evidence as an exhibit to Dr. Riley's deposition.

---

1The WCJ additionally noted possession of Worker's Exhibits 1 through 9, and then asked Employer/Insurer if it had any objection to the admission of these exhibits. Employer/Insurer responded in the negative, but it does not appear that the WCJ said during the hearing that Worker's Exhibits 1 through 9 were admitted into evidence. Neither party raises the argument that Worker's exhibits were not actually admitted, and it appears to us that this was an oversight on the part of the WCJ, in part because the exhibits are reflected on Worker's list of trial exhibits for the March 27, 2015, hearing, which was filed in front of the WCA on June 17, 2015. For these reasons, we proceed assuming that Worker's Exhibits 1 through 9 were admitted.

**{5}**     In the July 2015 compensation order, the WCJ determined that in addition to his physical ailments, Worker suffered depressive symptoms. The WCJ also found that the treatment recommendation in Worker's IPE for his depression was reasonable. The WCJ acknowledged that both Drs. Riley and Gabel opined that Worker was not yet at MMI because of his depression, but also found that Worker testified that his depression began the day of his accident and that "Worker failed to establish that he suffered any *change in his condition* of depressive symptoms between the December 20, 2012[,] order [granting Worker's First Petition] and the date of the formal hearing." (Emphasis added.) The WCJ also noted Dr. Gabel's conclusion that Worker "experienc[ed] ongoing depressive symptoms[,]" as well as Dr. Gabel's belief that Worker exhibited "signs of significant symptom magnification[.]" The WCJ affirmed Worker's MMI date of July 24, 2012, as verified by Worker in his First Petition.

**{6}**     In the compensation order, the WCJ concluded that Worker was "entitled to receive ongoing medical care subject to the recommendations of his authorized treating physicians[,] including the treatment recommendation contained in the IPE . . . and physical therapy." The WCJ also concluded that Worker "met the definition for [total temporary disability] from October 21, 2011[,] through July 24, 2012[,]" and that as of July 25, 2012, Worker was entitled to receive permanent partial disability. The WCJ stated that "Worker had a 5 [percent] whole person permanent impairment for his work related injuries[,]" and that he was "entitled to receive modifier benefits in the amount of 50 [percent] for the remainder of the benefit period or until he returns to work at a wage equal to or greater than his preinjury wage."

**{7}**     The WCJ also stated in the compensation order that Worker's attorney fees and costs would be determined by a separate order, and ordered Employer/Insurer to "pay all unpaid medical bills of authorized health care providers[,] if any." The compensation order continued, "Benefits consistent with this [o]rder [are to] be paid to Worker." In July 2015 Worker filed his motion to reconsider, arguing that the WCJ erred in determining that he was at MMI and asking that the WCJ permit him to submit evidence of an impairment rating for his depression, a request the WCJ denied. In September 2015 the WCJ found that Worker was entitled to $18,000 in attorney fees, but ordered Worker to pay 50 percent of those fees and Employer/Insurer to pay the other 50 percent. Worker timely filed his notice of appeal from the July 2015 compensation order and the order denying his motion to reconsider.

**{8}**     In November 2015 Worker filed his Second Petition for partial lump sum payment for debts, this time requesting $9,630 to pay his portion of his attorney fees. The Second Petition conceded only that Worker was at MMI for "physical injury[.]" The WCJ declined to rule on Worker's Second Petition, stating that Worker's appeal from her determination that Worker was at MMI on July 24, 2012, divested her jurisdictional capacity to order a partial lump sum award until MMI is established. Worker timely filed his second notice of appeal from the WCJ's denial of his Second Petition for a partial lump sum award. Worker later filed his unopposed motion to consolidate both appeals, which this Court granted.

**DISCUSSION**

**I.      Substantial Evidence Supports The WCJ's Determination of MMI**

**{9}**      On appeal, Worker contends he was not at MMI for "mental injury" as of July 25, 2012. We also construe Worker's argument to be that substantial evidence does not support the WCJ's conclusion that Worker's condition did not change after Worker's previously verified MMI date of July 24, 2012, even though he exhibited and communicated to his healthcare providers that he was suffering depressive symptoms both before and after that date. Regarding Worker's latter argument, he contends "[t]here is no evidence to support [the WCJ's conclusion that Worker's condition did not change] except [that] Worker testified that he had been depressed since the accident[.]" Employer/Insurer responds that evidence of change in Worker's condition was necessary to modify the WCJ's prior order granting Worker's First Petition because that order was contingent upon the MMI verified therein, and that the WCJ did not err in concluding that Worker failed to prove his condition changed. On these bases, Employer/Insurer argues that modification of the date of MMI would be improper. In reply, Worker argues that the WCJ could have modified the partial lump sum award by finding that Worker was no longer at MMI, and that his depression worsened—i.e., that it changed—following the partial lump sum award, yet was also "latent and undiagnosed[.]" Worker additionally argues that "the logical inference from the evidence is a worsening or subsequent occurrence of a substantially different 'depression' than Dr. Esparza observed." We agree with Employer/Insurer that Worker did not establish his condition had changed and affirm the WCJ.

**{10}**      "[W]e review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 20, 409 P.3d 956, *cert. denied* ___-NMCERT-___ (No. S-1-SC-36918, Dec. 20, 2017) (internal quotation marks and citation omitted). "Substantial evidence is credible evidence in light of the whole record that is sufficient for a reasonable mind to accept as adequate to support the conclusion." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 9, 347 P.3d 732 (alteration, internal quotation marks, and citation omitted). "We disregard that evidence which has little or no worth and then decide if there is substantial evidence in the whole record to support the agency's finding or decision." *Molinar*, 2018-NMCA-011, ¶ 20 (alterations, internal quotation marks, and citation omitted). "Where all or substantially all of the evidence on a material issue is documentary or by deposition, the reviewing court will examine and weigh it, and will review the record, giving some weight to the findings of the court on such issue, and will not disturb the same upon conflicting evidence unless such findings are manifestly wrong or clearly opposed to the evidence." *Id.* (alterations, internal quotation marks, and citation omitted). "We review the WCJ's application of the law to the facts de novo." *Id.*

**{11}**      Under NMSA 1978, Section 52-5-12(C) (2009), "a worker may elect to receive a partial lump-sum payment of workers' compensation benefits for the sole purpose of paying debts that have accumulated during the course of the injured or disabled

worker's disability." In order to do so, the worker must be at MMI and must obtain the WCJ's approval. *Id.* A WCJ may modify "any previous decision, award or action" for only one of seven reasons:

(1)       change in condition;
(2)        mistake, inadvertence, surprise or excusable neglect;
(3)       clerical error or mistake in mathematical calculations;
(4)     newly discovered evidence which by due diligence could not have been discovered prior to the issuance of the compensation order;
(5)     fraud, misrepresentation or other misconduct of an adverse party;
(6)     the compensation order is void; or
(7)     the compensation order has been satisfied, released or discharged or a prior order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the order should have prospective application.

NMSA 1978, Section 52-5-9 (2009). *See Sommerville v. Sw. Firebird*, 2008-NMSC-034, ¶ 12, 144 N.M. 396, 188 P.3d 1147 (recognizing that Section 52-5-9(A) authorizes the WCJ "to review and modify a previous decision *if circumstances change*[,]" including a lump sum award under Section 52-5-12(B) (emphasis added)); *Benny v. Moberg Welding*, 2007-NMCA-124, ¶¶ 8, 10, 142 N.M. 501 (explaining that where worker requested a modification to a stipulated compensation order after receiving a stipulated lump sum settlement, "Section 52-5-9(A) gives the WCJ the power to 'modify *any* previous decision, award or action' when circumstances change[,]" and concluding that there is "no substantive difference between the situation where benefits have been fully paid over time and a lump sum payment insofar as the availability of modification is concerned"). Accordingly, because an MMI date was necessary for Worker to be eligible for a partial lump sum award, for the WCJ to find that Worker was no longer at MMI, the WCJ would have had to modify her December 2012 order granting Worker the partial lump sum award, which was based on Worker's verification of July 24, 2012, as his MMI date in his First Petition.

**{12}**     This Court has previously discussed when a change in condition merits modification of a compensation order and partial lump sum award. In *Laughlin v. Convenient Mgmt. Servs., Inc.*, 2013-NMCA-088, ¶¶ 1, 11-14, 308 P.3d 992, we reviewed whether a WCJ could modify the MMI finding from a previous compensation order and partial lump sum award because the worker had experienced a change in condition. *Laughlin* discussed NMSA 1978, Section 52-1-56 (1989), which states that "if it appears . . . that the disability of the worker has become more aggravated or has increased without the fault of the worker, the WCJ shall order an increase in the amount of compensation allowable as the facts may warrant." *Laughlin*, 2013-NMCA-088, ¶ 11 (alteration, internal quotation marks, and citation omitted). We concluded that under both Section 52-1-56 and Section 52-5-9, the WCA "allows for the modification of compensation orders upon . . . a change of condition[,]" and that "a change in condition is broad enough to encompass a situation . . . in which the worker's physical or medical condition will change due to a worker's election to undergo different treatment."

*Laughlin*, 2013-NMCA-088, ¶¶ 12-13. *Laughlin* affirmed a WCJ's conclusion that a worker was no longer at MMI following the award of a partial lump sum payment because of evidence that his injury would have improved with surgery. *Id.* ¶ 13. Because that "conclusion directly implicates and relates to [the w]orker's physical condition[,]" the WCJ "did not err by determining that [the w]orker had a change in condition [following an initial compensation order and subsequent partial lump sum award] for purposes of Section 52-5-9(B)(1) by electing to undergo surgery . . . and determining that [the w]orker was no longer at [MMI]." *Laughlin*, 2013-NMCA-088, ¶¶ 4-6, 13.

**{13}** We begin our review of whether substantial evidence supports the WCJ's determination that Worker did not change between December 2012 and March 2015 by examining the testimony at the formal hearing. First, Dr. Esparza was aware of Worker's depression symptoms before July 24, 2012, and still found that Worker was at MMI as of that date. Dr. Esparza acknowledged in his report on March 22, 2012, and in his testimony about that report, that his review of Worker's symptoms indicated depression, but that he was not asked to do anything regarding Worker's depression. Dr. Esparza did not address whether he explicitly took into account Worker's complaint of depression in determining his MMI in July 2012, but clarified that he knew about Worker's depression when he was treating him. Worker's own testimony during the formal hearing established that he started experiencing depression the day of his accident, and Worker even testified during the hearing on his First Petition in December 2012 that the stress of being in debt because of his accident was "really devastating me mentally." In fact, Dr. Esparza testified that he understood Worker to be "depressed about the fact that he wasn't working and that he wanted to go back to doing some work so his mood would be elevated." In response to Employer/Insurer's question about whether "[Worker] had depression because of his feelings about how he didn't like being out of work[,]" Dr. Esparza opined, "I didn't certainly make more of [Worker's depression] than that, other than he mentioned that he wanted to return to some type of work." Dr. Esparza testified that he did not make a diagnosis of depression or other psychological conditions that were related to Worker's accident, and testified that he is familiar with depression and generally makes the necessary referrals if needed.

**{14}** Contrary to Dr. Esparza's opinion that Worker reached MMI on July 24, 2012, Drs. Gabel and Riley opined that Worker was not yet at MMI as of that date. However, Dr. Gabel also concluded that because of symptom magnification, Worker's objective psychological testing "cannot be assumed to give the most accurate assessment of [Worker's] current psychological functioning[,]" and that "one must be cautious in drawing specific conclusions from [the] results [of the evaluation]."

**{15}** There is a fair amount of evidence in the record that indicates that Worker's depression continued after Worker's partial lump sum award in December 2012. However, it is equally as clear that Worker reported depression to his healthcare providers prior to December 2012 and that Dr. Riley diagnosed Worker with depression on November 5, 2012, two weeks before Worker filed his First Petition. In the context of our analysis, a continuation of previously reported symptoms does not equate to a

change in symptoms. For example, a letter dated February 15, 2012, from Certified Nurse Practitioner Marcy Smith at the University of New Mexico's Urology Department to Dr. Riley, noted in the "Review of Systems" section that Worker had anxiety and depression, and stated that "[e]valuation by a psychiatrist may be useful." On March 22, 2012, Dr. Esparza's physician's assistant, Joel Gelinas, reported that Worker was experiencing anxiety and depression. During Worker's functional capacity assessment with a physical therapist on July 10, 2012, Worker reported that he was depressed "and feels worthless because he cannot do the things he did prior to his accident." And Dr. Riley observed on July 23, 2012, that Worker's "[o]verall appearance [wa]s depressed."

**{16}** Additionally, Dr. Gabel's report regarding Worker's depression as of 2014 was qualified. Although Dr. Gabel concluded that Worker was "experiencing ongoing depressive symptoms with a strong somatic focus[,]" she also observed that evidence from Worker's IPE was "suggestive of significant symptom magnification and this must also be considered." Dr. Gabel did not opine that Worker's depression had worsened since December 2012, even though she concluded that Worker was not yet at MMI.

**{17}** Given that Dr. Esparza was aware of Worker's depression when he determined that Worker was at MMI, Worker's reports of depression as early as February 2012, the qualified nature of Dr. Gabel's report, and Worker's testimony that he started to feel depressed the day of his accident, we conclude that substantial evidence supports the WCJ's determination that Worker's condition had not changed between December 2012 and March 2015. Unlike in *Laughlin*, where a worker's decision to undergo a different treatment plan evinced a change in his physical or medical condition, there is no evidence of such a change here. Worker's and Dr. Esparza's testimony, combined with the fact that Dr. Gabel did not assert that Worker's condition had changed, is "evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact[-]finder." *Levario v. Ysidro Villareal Labor Agency*, 1995-NMCA-133, ¶ 15, 120 N.M. 734, 906 P.2d 266.

**{18}** Although two experts disagreed with Dr. Esparza's conclusion that Worker reached MMI on July 24, 2012, we emphasize that our standard of review for whether substantial evidence supports the WCJ's determination that Worker's condition did not change is deferential. "[T]his Court is not empowered to choose between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo[.]" *Trujillo v. Los Alamos Nat'l Lab.*, 2016-NMCA-041, ¶ 45, 368 P.3d 1259 (emphasis, internal quotation marks, and citation omitted). *See Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 22, 146 N.M. 453, 212 P.3d 341 ("[W]eighing evidence and making credibility determinations are uniquely within the province of the trier of fact[;] we will not reweigh the evidence nor substitute our judgment for that of the WCJ, unless substantial evidence does not support the findings."); *cf. Hernandez v. Mead Foods, Inc.*, 1986-NMCA-020, ¶ 19, 104 N.M. 67, 716 P.2d 645 (observing in deciding that the uncontradicted medical testimony rule does not apply to the worker's ability to perform work that "[c]onflicts in the evidence, even in the testimony of a single witness, present a fact question for the trial court to

decide"). Accordingly, we conclude that substantial evidence supports WCJ's determination of Worker's date of MMI.

## II.    Worker's Remaining Arguments With Respect to The WCJ's MMI Conclusion

**{19}**    Worker also contends that the December 2012 partial lump sum award does not control his claim for secondary mental impairment, citing *Laughlin*, 2013-NMCA-088, and *Souter v. Ancae Heating and Air Conditioning*, 2002-NMCA-078, 132 N.M. 608, 52 P.3d 980 in support of his argument. We understand Worker's argument to be that because he previously verified that he was at MMI in order to receive his partial lump sum award, that previous verification should not be controlling with respect to whether he was later at MMI for his secondary mental impairment. As we have previously stated, because Worker verified that he was at MMI in November 2012 when he filed his First Petition, Worker needed to prove a *change* in his condition for the WCJ to modify the previous compensation order, which the WCJ concluded Worker had not done in part because he testified that he began feeling depressed the day of his work-related injury. Worker's reliance on *Souter*, therefore, is misplaced, because in *Souter*, the WCJ explicitly concluded that the previous compensation order was "the law of the case[,]" 2002-NMCA-078, ¶ 24, but here, the WCJ does not appear to have explicitly relied upon Worker's previous MMI verification in his First Petition. Worker's reliance on *Laughlin* is similarly misplaced because in *Laughlin*, the WCJ determined that "the law-of-the-case doctrine did not apply." 2013-NMCA-088, ¶ 23. Here, the WCJ did not determine that the law-of-the-case doctrine did or did not apply; the WCJ simply determined that Worker did not prove his condition changed. Because we have concluded that the WCJ's determination was supported by substantial evidence, we need not further consider this argument.

**{20}**    Worker also argues that the WCJ failed in the duty to advise Worker of the consequences of accepting a lump sum award during the hearing prior to the December 2012 order. Section 52-5-12(C) requires that a WCJ approve a partial lump sum award to pay debts, but does not specify additional requirements in terms of a WCJ's duty to advise Worker. Worker cites to *Woods v. City of Hobbs*, 1965-NMSC-145, ¶ 7, 75 N.M. 588, 408 P.2d 508 to support his argument that a worker's release of future Workers' Compensation claims "may be avoided if it is executed in reliance on misrepresentations amounting to fraud on the part of the release[.]" However, *Woods* is distinguishable because Worker did not sign a release in connection with the First Petition. Worker also asserts that he "did not know he was agreeing in the lump sum order to bar or release his secondary mental indemnity claims[,]" in part because the WCJ did not adequately warn him of that possibility. But the December 2012 partial lump sum award order did not explicitly bar additional secondary mental impairment indemnity claims, so Worker did not agree in connection with the First Petition to bar or release his secondary mental indemnity claims. Although Worker is ineligible for TTD benefits following MMI, in the June 2015 compensation order the WCJ awarded Worker PPD benefits and "ongoing medical care subject to the recommendations of his authorized treating physicians[,] including the treatment recommendation contained in

the IPE . . . and physical therapy." In other words, the WCJ awarded Worker benefits to include treatment for any mental issues as discussed by the IPE, so the WCJ did not strictly bar Worker's secondary mental indemnity claims.

**{21}**   Worker's argument appears to be that the WCJ should have warned him that by certifying that he was at MMI in December 2012 when he filed his petition for a partial lump sum award pro se, he would have to prove a change in condition in order to have the December 2012 order modified. Worker cites *Sommerville* to support this contention. *Sommerville* concluded that the WCA imposed "an affirmative duty" upon a WCJ "to ensure that a worker understands the lump sum settlement agreement into which he or she is entering." 2008-NMSC-034, ¶ 1. Additionally, NMSA 1978, Section 52-5-14(A) (1990) states that "[i]f the [WCJ] finds the lump-sum payment agreement to be fair, equitable and consistent with provisions of the [WCA] . . . he shall approve the agreement by order[.] . . . The [WCJ] may refuse to approve a settlement if he does not believe that it provides substantial justice to the parties."

**{22}**   In this case, during the hearing on the partial lump sum award in December 2012, the record reflects that the WCJ carefully answered Worker's questions and affirmatively ensured that he understood that any partial lump sum award he accepted then would decrease the total amount he eventually received from Employer/Insurer. Worker requested the partial lump sum award so that he could pay debts he owed after his accident. Because the WCJ ensured that Worker understood that a partial lump sum award would negatively impact the total amount of compensation that he received and shorten the period of time for which he would be compensated, we conclude that the WCJ met her affirmative duty to ensure that the partial lump sum award was fair, equitable, and consistent with the provisions of the WCA. *See* § 52-5-14(A) (stating WCJ shall approve a lump sum agreement if the WCJ finds the agreement to be "fair, equitable and consistent with provisions of the [WCA]"). Worker does not cite to any statute or case law requiring the WCJ to do more than that, and we have not found any, therefore we presume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

### III.   We Decline to Review Worker's Argument that the WCJ Deprived Him of Due Process With Respect to His Impairment Rating

**{23}**   Worker argues in a single paragraph that "he had no opportunity to get an impairment rating to attempt to prove entitlement to additional indemnity for permanent impairment[,]" in violation of NMSA 1978, Section 52-5-7(B) (1993). Section 52-5-7(B) discusses the procedure for conducting the formal hearing to determine all disputed matters in a worker's claim, and requires that the parties be given notice and an opportunity to respond. It is unclear to us why, if Worker argued during the hearing that he experienced a change in condition that merited modification of the compensation order, Worker did not utilize the opportunity that a formal hearing presented to "prove entitlement to additional indemnity for permanent impairment" because of his secondary mental impairment. We note that Worker raised this argument for the first time in his

motion to reconsider *following* a formal hearing that resulted in the July 2015 compensation order, so the WCJ did not deny Worker the opportunity to prove entitlement to additional indemnity because of his secondary mental impairment during the hearing because Worker never requested it. Worker does not cite to any other authority to support his argument. In light of these omissions, we decline to comb the record to determine if the WCJ erred in refusing to grant Worker the opportunity to present evidence concerning his impairment rating in light of his depression. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

## IV. The WCJ Did Not Err by Concluding She Could Not Rule On Worker's Application for a Partial Lump Sum Award for Attorney Fees

**{24}** Worker contends that the WCJ erred in declining to resolve his Second Petition for a partial lump sum award for attorney fees because "attorney[] fees are ancillary proceedings to an [a]ppeal on the merits." Worker argues that his appeal of the WCJ's MMI determination is irrelevant because "no less money will be due [W]orker if his appeal fails" since "there [was] no cross appeal of the physical MMI date[.]" Employer/Insurer responds that Worker's Second Petition for a partial lump sum award "is directly related to an issue now [o]n appeal, namely whether Worker is at MMI" and that if Worker succeeds in defeating the MMI determination, "Worker is not eligible for a partial lump sum payment." We review the WCJ's application of the law to the facts de novo. *Maez*, 2015-NMCA-049, ¶ 11.

**{25}** Worker and Employer/Insurer agree that the issue of attorney fees is collateral and is therefore an issue that the WCJ can address regardless of whether there is a pending appeal. In this case, the WCJ awarded attorney fees in a separate order following the entry of the July 2015 compensation order. *See Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 42, 113 N.M. 231, 824 P.2d 1033 ("The trial court retains the same jurisdiction to deal with matters collateral to or separate from the issues resolved in the judgment as it has following the filing of the notice of appeal. . . . Determining the amount of an attorney's fee award is one such matter."). Although Worker frames this issue as a simple matter of attorney fees in a Workers' Compensation case being a collateral issue, the correct inquiry is whether the WCJ erred by concluding that she could not rule on Worker's petition for a partial lump sum award, regardless of whether it was to pay attorney fees, when the overlapping issue, the WCJ's MMI determination, is the subject of Worker's appeal is the WCJ's MMI determination. As noted earlier, Worker must be at MMI before he can receive a lump sum award under Section 52-5-12(C) for payment of debts, a conclusion he has challenged.

**{26}** The WCJ reasoned that Worker's petition could not be granted because the WCA lacked jurisdiction due to the pending challenge of the MMI determination. Worker disagrees, arguing that the MMI determination was final only as to his physical injuries, and that his appeal only relates to his mental MMI. However, the WCJ made no such distinction, concluding that Worker's MMI was July 24, 2012, for all injuries. Section 52-

5-12(C) is clear that Worker must be at MMI in order to receive a partial lump sum award, and therefore, Worker's challenge to the WCJ's MMI determination prevented the WCJ from entertaining a petition for lump sum payment.

**{27}** Additionally, none of the authority Worker cites supports the proposition that the WCJ should have granted his petition for a partial lump sum award even though he appealed the WCJ's determination of his MMI. Worker relies on *Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, 311 P.3d 1231, to support his argument, as we perceive it, that the WCJ should have awarded the partial lump sum award from the benefits Worker received under the compensation order. But *Massengill* is not helpful to Worker because it concerned the finality of a lump sum award order for purposes of an award of post-judgment interest. *Massengill* also simply does not stand for the proposition that the WCJ could have granted Worker the partial lump sum award from his PPD benefits for his physical injuries. *Massengill* held that "the pending decision on [the w]orker's unresolved PPD benefits does not render the partial lump-sum award a non-final decision[,]" and therefore the employer was required to pay post-judgment interest on it. *Id.* ¶ 17. Again, the parties do not dispute that the WCJ's compensation order was final, and our conclusion that the WCJ did not commit error in refusing to award Worker a second partial lump sum award when the underpinning MMI determination had been appealed does not change that. *Massengill* is therefore inapposite since the finality of the compensation order is not at issue here.

**{28}** For the same reason, Worker's reliance on *Trujillo v. Hilton of Santa Fe*, 1993-NMSC-017, ¶ 1, 115 N.M. 397, 851 P.2d 106 is also unavailing, since *Trujillo* held that a compensation order not resolving the issue of attorney fees was non-final for purposes of appeal. Here, not only is finality not an issue, but the compensation order addressed attorney fees by saying they would be resolved in a separate order. Because Section 52-5-12(C) is clear that Worker must be at MMI in order to receive a partial lump sum award, we affirm the WCJ's decision that the WCA lacked jurisdiction to rule on Worker's Second Petition.

**CONCLUSION**

**{29}** For the foregoing reasons, we affirm the WCJ's MMI determination as supported by substantial evidence, and the conclusion that the WCJ could not rule on Worker's Second Petition for a partial lump sum award to pay his attorney fees.

**{30}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**MEGAN P. DUFFY, Judge**