2008-NMSC-028

184 P.3d 429

**Herman HIDALGO, Worker–Petitioner,**

v.

**RIBBLE CONTRACTING, and Builders Trust of New Mexico, Employer–Insurer–Respondents.**

No. 30,473.

Supreme Court of New Mexico.

April 25, 2008.

The Chacon Law Firm, M. David Chacon, II, Martin E. Threet & Associates, Martin E. Threet, Victor S. Lopez, Albuquerque, NM, for Petitioner.

David L. Skinner, P.C., David L. Skinner, Albuquerque, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} In this appeal, arising under the Workers' Compensation Administration Act (WCAA), NMSA 1978, §§ 52-5-1 to -22 (1986, as amended), we review the timeliness of a party's petition seeking modification of a binding recommended resolution that is internally inconsistent due to a clerical error. Having reviewed the relevant statutory provisions, we conclude that a party may petition a workers' compensation judge to modify a binding recommended resolution within the two-year time period provided by statute, so long as the party's application is based on one of the statutorily enumerated grounds.

## BACKGROUND

{2} Herman Hidalgo, Worker, was injured in July 2001, while working for Ribble Contracting, Employer. Worker's injuries occurred when he was forced to jump from the mechanical sweeper that he was driving, which began to roll downhill after the transmission failed. He filed a series of claims under the WCAA, culminating with the claim that forms the basis for this appeal, which he filed on November 28, 2006.

{3} Worker filed the November 2006 claim as a result of the following events. On July 15, 2005, Employer requested that Worker undergo an Independent Medical Evaluation (IME). Based on the results of the IME, Employer wrote Worker a letter on March 7, 2006, explaining that Employer was reducing Worker's benefits. In that letter, Employer noted that the IME panel suggested that Worker's disability status be changed as of November 30, 2004.

{4} On March 16, 2006, Worker filed a claim contesting the date of the status change. The claim went to mediation, which was held on May 10, 2006. During mediation, Worker argued that the date of the status change should be April 4, 2006, while Employer argued that the date should be November 30, 2004. The mediator noted that the IME panel had also determined that the change in status date should be November 30, 2004. The Recommended Resolution was filed on May 16, 2006, and was timely accepted by both parties. The Recommended Resolution ordered that benefits continue to be paid to Worker, at a rate based upon his changed status. After receiving both Worker's and Employer's acceptance, the Workers' Compensation Administration filed a Notice of Completion on August 18, 2006.

{5} In November 2006, Worker stopped receiving payments. He wrote a letter to Employer on November 27, 2006, requesting that Employer continue to pay the benefits as required by the Recommended Resolution. On November 28, 2006, Employer faxed Worker a letter in response, explaining that Worker's benefits were being terminated based on a discrepancy in the Recommended Resolution. Employer pointed out that the Recommended Resolution actually listed two different dates as the effective date for Worker's change in disability status, November 30, 2001, and November 30, 2004.

{6} As noted above, the Recommended Resolution affirmatively states that both Employer and the IME panel determined that the change in status date should be November 30, 2004. The discrepancy arises in the section captioned "Mediator's Recommended Resolution of Issues Raised." In the first sentence of that Section, the Recommended Resolution states: "The maximum medical improvement date which should be used by the parties should be November 30, 2004 . . . ." However, in the first sentence of the second paragraph, the Recommended Resolution states that Worker reached maximum medical improvement on November 30, 2001.

{7} Employer chose to use the November 30, 2001 date, despite its counsel's "own best guess that the mediator's recommendation for November 30, 2001 ... amounts to a mistake on his part." Having chosen 2001 as the effective date, Employer stated that it was no longer required to make payments to Employee. In fact, Employer wrote, based on the 2001 effective date, Employer had overpaid Worker. Employer offered to waive the overpayment if Worker would agree that no additional benefits were due.

{8}.After receiving Employer's fax, Worker filed an application with the Workers' Compensation Judge (WCJ) seeking to have the Recommended Resolution enforced. The WCJ held a hearing on December 12, 2006. During the hearing, Worker argued that the Recommended Resolution was ambiguous because of the two conflicting dates. Employer argued that the Recommended Resolution was binding, and that Worker had failed to reject it within the thirty-day period set forth by Section 52–5–5(C). Employer, relying on *Medina v. Hunemuller Construction, Inc.,* 2005–NMCA–123, 138 N.M. 472, 122 P.3d 839, argued that the Recommended Resolution could not be modified, despite the admitted error.

{9} To place these arguments in context, we briefly discuss the relevant statutory provisions. Section 52–5–5, the statutory provision relied on by Employer, describes the process by which a complaint is initially handled. Section 52–5–5(C), the subsection at issue in this appeal, provides:

> Upon receipt, every claim shall be evaluated by the director or his designee, who shall then contact all parties and attempt to informally resolve the dispute. Within sixty days after receipt of the claim, the director shall issue his recommendations for resolution and provide the parties with a copy by certified mail, return receipt requested. Within thirty days of receipt of the recommendation of the director, each party shall notify the director on a form provided by him of the acceptance or rejection of the recommendation. *A party failing to notify the director waives any right to reject the recommendation and is bound conclusively by the director's recommen-*

*dation unless, upon application made to the director within thirty days after the foregoing deadline, the director finds that the party's failure to notify was the result of excusable neglect.* If either party makes a timely rejection of the director's recommendation, the claim shall be assigned to a workers' compensation judge for hearing.

(Emphasis added.)

{10} The second provision at issue in this appeal, Section 52–5–9, involves the procedures for modifying a compensation order. Section 52–5–9(B) provides that compensation orders are reviewable "at any time within two years after the date of the last payment or the denial of benefits." The statute sets forth certain grounds for review, including clerical error. *See* § 52–5–9(B)(3). The WCJ may, after a hearing, issue a subsequent compensation order "to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits ... or in any other respect ... modify any previous decision, award or action." Section 52–5–9(A).

{11} On January 2, 2007, the WCJ entered an order granting Worker's application pursuant to Section 52–5–9(B)(2) (mistake, inadvertence, surprise or excusable neglect) and Section 52–5–9(B)(3) (clerical error), despite Employer's argument that Worker's application was barred by the time limits contained within Section 52–5–5(C). The WCJ set aside the Recommended Resolution and referred the matter to mediation to resolve the inconsistency surrounding the change in status date. The WCJ further ordered that Employer was not required to pay benefits until the issue was resolved.

{12} Employer appealed to the Court of Appeals arguing that the WCJ erred when it granted Worker's application pursuant to Section 52–5–9(B). The Court of Appeals, in a memorandum opinion, reversed the WCJ and remanded the case with instructions that the WCJ treat the Recommended Resolution as conclusively binding. *Hidalgo v. Ribble Contracting,* No. 27,358, slip op. (Ct.App. May 29, 2007). Neither Employer nor the Court of Appeals dispute that the November 30, 2001 date is erroneous and that it was

likely clerical error. *See id.* at 3 ("It is undisputed that the November 30, 2001 date is erroneous and that it conflicts with the previous paragraph's statement that the parties agree that the MMI date is November 30, 2004.").

## STANDARD OF REVIEW

■ {13} The resolution of this appeal involves the interpretation of two statutes contained within the WCAA, which we review de novo. *See State v. Smith,* 2004–NMSC–032, ¶ 8, 136 N.M. 372, 98 P.3d 1022.

## DISCUSSION

{14} Employer relies on Section 52–5–5(C), and *Medina,* 2005–NMCA–123, 138 N.M. 472, 122 P.3d 839, a recent Court of Appeals opinion construing that Section, as support for its argument that Worker failed to timely file his application to correct the Recommended Resolution. Employer argues that Worker had to file his application to modify the Recommended Resolution within the thirty-day time limit prescribed in Section 52–5–5(C) because Worker was seeking to modify a recommended resolution based on mistake or clerical error. Employer contends that Worker is foreclosed from seeking relief under Section 52–5–9 by the language of the statute and by established case law.

■ {15} At the outset, we note that once a recommended resolution becomes binding—once the deadline to accept or reject the recommended resolution has passed—the recommended resolution "is tantamount to a compensation order for purposes of administrative review under Section 52–5–9." *Norman v. Lockheed Eng'g & Sci. Co.,* 112 N.M. 618, 622, 817 P.2d 1260, 1264 (Ct.App.1991). This conclusion comports with the WCJ's finding in its January 2007 Order that the Recommended Resolution "was transformed into a compensation order upon mutual acceptance of the [Recommended Resolution] by the parties on June 14, 2006." Employer acknowledged the same, stating: "The mutual acceptance of the Recommended Resolution formed a Compensation Order." Thus, the accepted Recommended Resolution at issue in this appeal is, for purposes of adminis-

trative and appellate review, a compensation order.

■ {16} Turning first to the language of Section 52–5–5(C), we conclude that Employer's reliance on the thirty-day time limit set forth in that Section is misplaced. *See id.* ("Within thirty days of receipt of the recommendation of the director, each party shall notify the director on a form provided by him of the acceptance or rejection of the recommendation."). The plain language of Section 52–5–5(C) reveals that the time limit prescribed by that Section applies *only* to an untimely acceptance or rejection of a recommended resolution, not to the modification of a subsequent compensation order. *See Norman,* 112 N.M. at 622, 817 P.2d at 1264 ("The language of Section 52–5–5(C) specifically addresses a party's obligation to respond to a recommended resolution."); *Armijo v. Save 'N Gain,* 108 N.M. 281, 285, 771 P.2d 989, 993 (Ct.App.1989) ("[M]otions filed by the parties, including a motion to withdraw a prior acceptance of a proposed informal resolution, must be filed within thirty days after the issuance of the prehearing officer's recommendations."); *see also Medina,* 2005–NMCA–123, ¶ 25, 138 N.M. 472, 122 P.3d 839 (Wechsler, J., dissenting) ("I agree with the special concurrence in *Armijo* that Section 52–5–5(C) 'applies only to a situation where a party has failed to notify the director of acceptance or rejection of the recommendation.'" (quoting *Armijo,* 108 N.M. at 286, 771 P.2d at 994 (Apodaca, J., specially concurring))).

■ {17} Further, the "excusable neglect" provision contained in Section 52–5–5(C) applies only when a failure to timely reject the recommended resolution is due to excusable neglect. *See id.* ("A party failing to notify the director waives any right to reject the recommendation and is bound conclusively by the director's recommendation unless, upon application made to the director within thirty days after the foregoing deadline, *the director finds that the party's failure to notify was the result of excusable neglect.*" (Emphasis added.)); *accord Norman,* 112 N.M. at 622, 817 P.2d at 1264 ("The excusable neglect alleged in this case concerns the un-

derlying reasons for failing to timely respond to the recommended resolution.").

{18} Having concluded that the time limit set forth in Section 52–5–5(C) applies only when a party is seeking to reject or withdraw an acceptance of a recommended resolution, we now turn to a review of *Medina,* which Employer and the Court of Appeals cite in support of their conclusion that Worker's application was untimely. The Court of Appeals in *Medina* relied on *Armijo* and *Norman* to conclude that Section 52–5–5(C) provides the exclusive relief for a party seeking review of a recommended resolution based on mistake or excusable neglect. *Medina,* 2005–NMCA–123, ¶ 1, 138 N.M. 472, 122 P.3d 839. In reaching this conclusion, the Court of Appeals appears to have misapplied both *Armijo* and *Norman.*

{19} In *Armijo,* the worker timely accepted the recommended resolution based on incorrect information provided by her attorney. *Armijo,* 108 N.M. at 284–85, 771 P.2d at 992–93. After consulting another attorney, the worker filed an application to reject the previously accepted recommended resolution, and to proceed to a hearing as provided by Section 52–5–5(C). *Armijo,* 108 N.M. at 282, 771 P.2d at 990. Significantly, the worker did not argue that the time limits of Section 52–5–9 applied to her application. *See id.* at 286–87, 771 P.2d at 994–95 (Apodaca, J., specially concurring) (noting that, at the time the appeal was decided, "there [was] no provision for reconsidering a Workers' Compensation Division prehearing officer's recommended resolution"). Because the worker was attempting to withdraw her acceptance of the recommended resolution, the Court held that the time limits of Section 52–5–5(C) applied and that her application was untimely. *Id.* at 286, 771 P.2d at 994 (majority opinion).

{20} Similarly, in *Norman,* the employer filed an application to reject the recommended resolution, due to excusable neglect, outside the time limits of Section 52–5–5(C). *Norman,* 112 N.M. at 618, 817 P.2d at 1260. The employer argued that its application to reject the recommended resolution should be analyzed under the rubric of Section 52–5–9(B)(2) (providing review based on mistake or excusable neglect), rather than the "excusable neglect" provision of Section 52–5–5(C). *Norman,* 112 N.M. at 620, 817 P.2d at 1262. The Court of Appeals correctly rejected the employer's argument, because "[t]he excusable neglect ... concern[ed] the underlying reasons for failing to timely respond to the recommended resolution." *Id.* at 622, 817 P.2d at 1264.

■ {21} Both *Armijo* and *Norman* stand for the limited proposition that a party seeking to withdraw its acceptance of a recommended resolution, or reject a recommended resolution, must do so within the time provided by Section 52–5–5(C). Those cases also instruct that if a party fails to reject the recommended resolution or withdraw its acceptance within thirty days after receiving the recommended resolution, that party then has an additional thirty days to notify the director that the party failed to reject or withdraw their application due to excusable neglect. If, however, a party fails to apply to the director to reject or withdraw an acceptance outside the time limits provided by Section 52–5–5(C), that party's application will be considered untimely. Neither *Armijo* nor *Norman* address a situation where a party is seeking to have an otherwise binding compensation order modified.

{22} In *Medina,* unlike the parties in *Armijo* and *Norman,* the employer was not seeking to reject the recommended resolution and did not assert mistake or excusable neglect as the basis for failing to accept or reject the recommended resolution. Instead, the employer filed an application to modify the compensation order, based on a mistake in computing the worker's weekly wages. *Medina,* 2005–NMCA–123, ¶ 1, 138 N.M. 472, 122 P.3d 839. When the Court of Appeals applied Section 52–5–5(C) to the employer's application for a modification of a compensation order based on mistake, the Court departed from the holdings of *Norman* and *Armijo* because those cases apply only when a party is seeking to reject or withdraw an acceptance of a recommended resolution. *See Medina,* 2005–NMCA–123, ¶ 14, 138 N.M. 472, 122 P.3d 839 (relying on *Norman* as support for the Court's conclusion that the time limits of Section 52–5–5(C) apply to a

motion to modify a compensation order based on mistake); *see also Fasso v. Sierra Health-care Ctr.*, 119 N.M. 132, 133, 888 P.2d 1014, 1015 (Ct.App.1994) (stating that *"Norman* held that a party who fails to file a response to a recommended resolution is governed by the time limits of Section 52–5–5(C) when seeking to modify the compensation order based on mistake or excusable neglect"). When, however, a party is not seeking to withdraw or reject a previously accepted recommended resolution, but rather seeks to modify a binding compensation order, the time limits in Section 52–5–5(C) simply do not apply, and, consequently, neither do the holdings in *Norman* or *Armijo*. Any contrary inference in either *Medina* or *Fasso* is hereby overruled.

{23} In the present case, Worker was not attempting to reject or withdraw the Recommended Resolution. Instead, Worker filed an application with the WCJ to *enforce* the Recommended Resolution and modify the resulting compensation order, which was ambiguous, due to clerical error by the mediator. Therefore, Worker's application is not governed by either time limit prescribed by Section 52–5–5(C). Further, having disproved of *Medina*, we reject Employer's argument, and the Court of Appeals' conclusion, that Worker's application to modify the compensation order was controlled by the time limits prescribed by Section 52–5–5(C).

■ {24} We next turn to the proper application of Section 52–5–9. This Section provides that compensation orders are reviewable "at any time within two years after the date of the last payment or the denial of benefits." The statute enumerates certain grounds for review, which include mistake or clerical error. *See* § 52–5–5(B)(2), (3). After a hearing, a WCJ may issue a subsequent compensation order "to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits . . . or in any other respect . . . modify any previous decision, award or action." Section 52–5–9(A).

{25} By the statute's plain language, Section 52–5–9(B) allows for review of a compensation order if the review is premised on mistake or clerical error. *See* § 52–5–9(B)(2),(3); *see also Fasso*, 119 N.M. at 133, 888 P.2d at 1015 ("[W]hen considering other grounds for modification under Section 52–5–9 . . . the two-year limitation period of Section 52–5–9 applies as with any other compensation order."). To hold that Section 52–5–9 does not apply to this appeal would be contrary to the plain language of the statute and would render portions of that statute surplusage. *See State v. Javier M.*, 2001–NMSC–030, ¶ 32, 131 N.M. 1, 33 P.3d 1. We hold instead that the two-year time limitation prescribed by Section 52–5–9 applies to Worker's application.

{26} Finally, we do not agree that the resolution "sets forth, finally and conclusively, the rights and obligations of the parties." *Hidalgo*, No. 27,358, slip op. at 4. Instead, the Recommended Resolution, with its internally inconsistent dates, cannot be read to conclusively set forth the rights and obligations of *either* party. Focusing solely on the Recommended Resolution and not on the compensation order would ignore an acknowledged clerical error, would exalt form over substance, and, in effect, would favor one party over the other, contrary to the purposes of the WCAA. *See* § 52–5–1 ("Accordingly, the legislature declares that the Workers' Compensation Act . . . [is] not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.").

{27} We conclude that the clerical error in this case constitutes a valid ground for review of the Recommended Resolution and the resulting compensation order under Section 52–5–9. Having so concluded, we hold that the WCJ did not err in referring the

case to mediation to resolve the apparent ambiguity in the Recommended Resolution.

## CONCLUSION

{28} We reverse the Court of Appeals and reinstate the Workers' Compensation Judge's order referring this matter to mediation.

{29} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and CHARLES W. DANIELS, Justices.