Certiorari Denied, July 24, 2013, No. 34,205

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-088

Filing Date: May 20, 2013

Docket No. 32,074

LARRY V. LAUGHLIN,

    Worker-Appellee/Cross-Appellant,

v.

CONVENIENT MANAGEMENT SERVICES,
INC. and ARGONAUT INSURANCE COMPANY,

    Employer/Insurer-Appellants/Cross-Appellees.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Gregory D. Griego, Workers Compensation Judge

Gerald A. Hanrahan
Albuquerque, NM

for Worker-Appellee/Cross-Appellant

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Employer/Insurer-Appellants/Cross-Appellees

## OPINION

**WECHSLER, Judge.**

**{1}** Employer Convenience Management Services, Inc. appeals from a compensation order entered pursuant to the Workers' Compensation Act (the Act), NMSA 1978, Sections 52-1-1 to -70 (1929, as amended through 2007). Worker filed a cross-appeal, which we address in a separate memorandum opinion. In the compensation order, the Workers Compensation Judge (the WCJ) determined that Worker Larry Laughlin was not at

maximum medical improvement despite previously finding that Worker had reached maximum medical improvement five months earlier in an order granting Worker a partial lump sum payment from future permanent partial disability for payment of debts, pursuant to NMSA 1978, Section 52-5-12(C) (2009). We hold that the WCJ did not err by determining that Worker had a "change of condition" under NMSA 1978, Section 52-5-9(B)(1) (1989) by electing to undergo surgery on his work-related injury and determining that Worker was no longer at maximum medical improvement. We further hold that neither judicial estoppel nor the law-of-the-case doctrine bars Worker's change of position regarding whether he was at maximum medical improvement at the date of his formal hearing despite the WCJ's finding that he was at maximum medical improvement at the time of the lump sum order. Accordingly, we affirm.

**BACKGROUND**

{2}    Worker suffered accidents on August 22, 2008 and September 14 or 30, 2008 while working for Employer. Worker suffered injuries to both his lower back and left testicle. He filed a complaint with the Workers' Compensation Administration (the WCA) on March 3, 2009, requesting temporary total disability benefits until he reached maximum medical improvement and permanent partial disability benefits upon reaching maximum medical improvement.

{3}    The parties entered a recommended resolution on May 7, 2009 that provided a $5000 payment to Worker and named Dr. Benito Gallardo as Worker's authorized treating physician. Dr. Gallardo examined Worker on May 6, 2009 and found a causal connection between Worker's injuries and the accidents on August 22, 2008 and September 14 or 30, 2008. When Employer refused to provide any temporary total disability after Dr. Gallardo's report, Worker filed a second worker's compensation complaint. Employer rejected a second recommended resolution on September 29, 2009, and the claim entered the adjudication process. Employer did issue worker temporary total disability benefits of $213.91 a week from July 8, 2009 through August 18, 2009 and October 21, 2009 through May 3, 2011.

{4}    Dr. Gallardo testified by deposition on September 24, 2010 that Worker's back injury reached maximum medical improvement by March 4, 2010. Likewise, at his second deposition, Dr. Gallardo testified that Worker's left testicle injury had reached maximum medical improvement by January 25, 2011, at the time that Worker elected not to have surgery on his left testicle. Dr. Gallardo also stated in his second deposition that Worker was not interested in having surgery on his left testicle but that if Worker did have a surgical procedure, his left testicle injury would no longer be at maximum medical improvement. After Dr. Gallardo reported maximum medical improvement on January 25, 2011, Employer issued partial permanent disability benefits to Worker at 44% impairment commencing on May 4, 2011.

{5}    On June 30, 2011, Worker filed a petition for partial lump sum payment for debts,

2

pursuant to Section 52-5-12(C). The WCJ granted the lump sum request by order on July 20, 2011. The order granting partial lump sum payment for debts (the lump sum order) determined that Worker's injuries had reached maximum medical improvement. The WCJ found that Worker had debts of $4,200.73 and approved an advance payment of that amount to be deducted from future partial permanent disability benefits. The WCJ also approved an advance payment for an amount equal to Worker's first and last month's rent, plus a damage deposit in the event that Worker entered into a written rental agreement. Worker subsequently entered into a new lease agreement, and Employer advanced an additional $1250 to Worker.

{6}     The WCJ held the formal hearing on Worker's claims on December 22, 2012 and issued a memorandum decision and order on February 8, 2012 regarding the effect of the prior lump sum award. The WCJ determined that the Act allows for a worker to reach a status of maximum medical improvement and subsequently be removed from that status under Sections 52-5-9(B)(1) and 52-1-56 upon, among other reasons, a change in condition. The WCJ concluded that the Act contemplates that judicial estoppel would not be applicable to a previous determination that a worker is not at maximum medical improvement. Additionally, the WCJ determined that the law-of-the-case doctrine does not preclude a worker from arguing about a change of maximum medical improvement status as long as the change is asserted more than six months after the entry of the order.

{7}     At the formal hearing, Worker testified that he tried to delay surgery as long as possible on his injured testicle. However, he testified that he now wanted the surgical procedure. Both parties requested findings and conclusions after the December 22, 2011 formal hearing, and the WCJ issued a compensation order on March 14, 2012. Regarding the legal effect of the lump sum order of July 20, 2011, the WCJ concluded that the lump sum order did not bar Worker from arguing that he was no longer on maximum medical improvement at the formal hearing. Accordingly, the WCA found that Worker first reached maximum medical improvement as of September 10, 2010 but that "Worker ceased to be on maximum medical improvement status as of December 22, 2011 when Worker indicated his willingness to be treated surgically for the [testicle injury]."

{8}     On appeal, Employer raises three arguments regarding the WCJ's finding that Worker was no longer at maximum medical improvement because of his willingness to have surgery to treat his injured left testicle. Employer argues that the WCJ erred by determining that (1) Worker's willingness to have surgery constituted a change of condition under Sections 52-1-9(B)(1) and 52-1-56 even though his physical or medical condition had not changed since the WCJ determined he was at maximum medical improvement in the lump sum order; (2) judicial estoppel did not preclude Worker from arguing that his left testicle injury had not reached maximum medical improvement at the formal hearing; and (3) the law-of-the-case doctrine did not preclude Worker's change of position that he was no longer at maximum medical improvement.

**STANDARD OF REVIEW**

3

**{9}**     "All workers' compensation cases are reviewed under a whole record standard of review." *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. When our review consists of reviewing a "WCJ's interpretation of statutory requirements, we apply a de novo standard of review." *DeWitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341. We review the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320. However, "[w]here the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact." *Id.* (internal quotation marks and citation omitted); *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 17, 715 P.2d 462, 465 (Ct. App. 1986).

## CHANGE OF CONDITION

**{10}**     Employer first argues that Worker's testimony that he now wants surgery to treat his left testicle injury does not constitute a change of condition and, therefore, the WCJ erred by ruling that Worker was no longer at maximum medical improvement as of December 22, 2011. In Employer's view, the term "change of condition" refers to a change in a worker's medical or physical condition, and Worker presented no testimony that his physical condition had changed, only that he now wishes to have surgery to address the condition. Worker's response is twofold: first, he argues that the lump sum order is not a compensation order for purposes of Sections 52-5-9(B)(1) and 52-1-56 and, second, that his decision to have surgery on his left testicle is a change of condition.

**{11}**     Employer premises his argument that the WCJ was required to find that Worker's physical or medical condition changed in order to determine that Worker was no longer at maximum medical improvement on Sections 52-1-56 and 52-5-9(B)(1). Section 52-1-56 provides:

> The [WCJ] may, upon the application of the employer, worker or other person bound by the compensation order, fix a time and place for hearing upon the issue of claimant's recovery. If it appears upon such hearing that diminution or termination of disability has taken place, the [WCJ] shall order diminution or termination of payments of compensation as the facts may warrant. If it appears upon such hearing that the disability of the worker has become more aggravated or has increased without the fault of the worker, the [WCJ] shall order an increase in the amount of compensation allowable as the facts may warrant. Hearings shall not be held more frequently than at six-month intervals.

In relevant part, Section 52-5-9 provides:

> A.      Compensation orders are reviewable subject to the conditions stated in this section upon application of any party in interest in accordance with the procedures relating to hearings. The [WCJ], after a hearing, may

issue a compensation order to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the . . . Act . . . .

B.    A review may be obtained upon application of a party in interest filed with the director at any time within two years after the date of the last payment or the denial of benefits upon the following grounds:

(1)    change in condition[.]

**{12}**    Under these provisions, the Act allows for modification of compensation orders upon the aggravation of the worker's disability or upon a change of condition. Employer contends that the term "change in condition" as used in Section 52-5-9(B)(1) refers only to a "change in a worker's medical or physical condition" and is not broad enough to encompass a situation in which the worker elects to undergo a different treatment option without a change in his medical condition. *See Fasso v. Sierra Healthcare Ctr.*, 119 N.M. 132, 134, 888 P.2d 1014, 1016 (Ct. App. 1994), *overruled on other grounds by Hidalgo v. Ribble Contracting*, 2008-NMSC-028, 144 N.M. 117, 184 P.3d 429. Employer additionally states that the case law construing Section 52-1-56 mandates that the worker's disability must increase in order to constitute a change of condition.

**{13}**    We conclude that, although a change of condition must relate to a worker's physical or medical condition, a change in condition is broad enough to encompass a situation such as in this case in which the worker's physical or medical condition will change due to a worker's election to undergo different treatment. Viewed in the context of the Act's definition of maximum medical improvement, Worker, by electing to have the surgery, had a change in his physical condition sufficient to support the WCJ's conclusion that he was not at maximum medical improvement. *See DeWitt*, 2009-NMSC-032, ¶ 14 ("[W]e construe the provisions of the Act together to produce a harmonious whole."). The Act defines the date of maximum medical improvement as "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider." Section 52-1-24.1. The WCJ's conclusion that Worker was no longer at maximum medical improvement was based on evidence that his left testicle injury would improve with surgical treatment. This conclusion directly implicates and relates to Worker's physical condition. As such, the WCJ did not err by determining that Worker had a change of condition for purposes of Section 52-5-9(B)(1) by electing to undergo surgery on his left testicle and determining that Worker was no longer at maximum medical improvement.

**{14}**    The cases relied upon by Employer for the proposition that a change in condition must be based on an aggravation or change to Worker's physical or medical condition apart from treatment are inapposite. In *Herrera v. Quality Imports*, 1999-NMCA-140, ¶ 12, 128 N.M. 300, 992 P.2d 313, this Court held that a change in the worker's educational status did not relate to the "disability" or physical condition of the worker and therefore modification

under Section 52-1-56 was improper based solely on a change in education status. However, *Herrera* expressly declined to determine whether modification would be warranted under the "change of condition" provision of Section 52-5-9(B)(1). *Herrera*, 1999-NMCA-140, ¶ 3. Additionally, in this case, Worker's election to have surgery was tied to his physical condition and the expected improvement of the condition by undergoing the surgery. The other cases cited by Employer address substantial evidence issues regarding whether the worker adequately showed an increase in the disability percentage and therefore justified a modification of the award and do not stand for any broad propositions limiting what constitutes a change in condition. *See, e.g.*, *Jaramillo v. Consolidated Freightways*, 109 N.M. 712, 715, 790 P.2d 509, 512 (Ct. App. 1990) (holding that substantial evidence supported the WCJ's conclusion that there was no change in the worker's physical condition); *Holliday v. Talk of the Town Inc.*, 98 N.M. 354, 356, 648 P.2d 812, 814 (Ct. App. 1982) (holding that the worker failed to show that his injuries were aggravated and thus justified an increased award).

**JUDICIAL ESTOPPEL**

**{15}**     Employer next argues that the WCJ erred by determining that the doctrine of judicial estoppel did not preclude Worker from arguing that his work-related injuries had not reached maximum medical improvement at the formal hearing. Employer argues that because Worker took the position that his injury had reached maximum medical improvement when he sought and received the partial lump sum payment for future PPD benefits on July 20, 2011, the district court should have determined that judicial estoppel precluded Worker from claiming that his injuries had not reached maximum medical improvement at the December 22, 2011 formal hearing. We review the proper application of judicial estoppel under an abuse of discretion standard. *Keith v. ManorCare, Inc.*, 2009-NMCA-119, ¶ 17, 147 N.M. 209, 218 P.3d 1257.

**{16}**     The doctrine of judicial estoppel "prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position, especially if doing so prejudices a party who had acquiesced in the former position." *Rodriguez v. La Mesilla Constr. Co.*, 1997-NMCA-062, ¶ 20, 123 N.M. 489, 943 P.2d 136. The purpose of judicial estoppel is to prevent a party "from playing fast and loose with the court during the course of litigation." *Citizens Bank v. C & H Constr. & Paving Co.*, 89 N.M. 360, 366, 552 P.2d 796, 802 (Ct. App. 1976) (internal quotation marks and citation omitted). Our Supreme Court has stated that

> [t]hree elements must be addressed for a party to prevail under the doctrine of judicial estoppel. First, the party against whom the doctrine is to be used must have successfully assumed a position during the course of litigation. Second, that first position must be necessarily inconsistent with the position the party takes later in the proceedings. Finally, while not an absolute requirement, judicial estoppel will be especially applicable when the party's change of position prejudices a party who had acquiesced in the former

6

position.

*Santa Fe Pac. Trust, Inc. v. City of Albuquerque*, 2012-NMSC-028, ¶ 32, 285 P.3d 595 (internal quotation marks and citation omitted).

**{17}** It appears that the first two elements exist in this case. Worker took the position that his injuries were at maximum medical improvement as of the July 20, 2011 order granting partial lump sum payment for debts and took the inconsistent position that he was no longer at maximum medical improvement at the formal hearing on December 22, 2011. However, under the facts and circumstances of this case, judicial estoppel does not apply. First, Employer fails to show how it was prejudiced by the change of position in this case. At the time of the interim order, Employer was aware that the matter was still in active litigation and that a final compensation order based on the formal hearing had not been entered. The interim order did not prevent Employer from contesting the maximum medical improvement date at the formal hearing. Most importantly, although the interim order required Employer to advance $4,200.73 to Worker, the funds were from Worker's future permanent partial disability benefits, and Employer received a dollar-for-dollar credit for the advance payment in the final compensation order. Our cases have generally required the party asserting judicial estoppel to make a showing of prejudice caused by the opposing party's change of position. *See, e.g.*, *Guzman v. Laguna Dev. Corp.*, 2009-NMCA-116, ¶ 15, 147 N.M. 244, 219 P.3d 12 (applying judicial estoppel to bar the defendant from arguing that workers' compensation was the plaintiffs' exclusive remedy due to the prejudicial effect of depriving the plaintiffs of a forum because the defendant previously successfully argued in the workers' compensation administration that the claim was outside the scope of the Act).

**{18}** Second, as we have discussed, the purpose of judicial estoppel is to prevent "a party from playing fast and loose with the court during litigation." *Santa Fe Pac. Trust, Inc.*, 2012-NMSC-028, ¶ 33 (internal quotation marks and citation omitted). Nothing in the circumstances of this case indicates that Worker was trying to "play fast and loose" with the WCJ by changing his position about whether his injuries had reached maximum medical improvement. At the time that Worker requested the partial lump sum payment for future PPD benefits, his position was that he was at maximum medical improvement because he had elected to not have surgery on his left testicle injury. At the formal hearing, Worker's position was that he was not at maximum medical improvement because he had elected to have the surgery. Nothing in the record indicates that Worker's change of position was designed to mislead the WCJ or otherwise take advantage of the system. *Cf. id.* ¶ 33 (stating that "nothing in the record indicates that the [party opposing judicial estoppel] intentionally attempted to mislead the Court" by changing its position).

**LAW OF THE CASE**

**{19}** Employer lastly argues that the law-of-the-case doctrine barred Worker from changing his position on whether he had reached maximum medical improvement at the formal hearing because the law of the case is that Worker reached maximum medical

7

improvement by July 20, 2011. We review this issue de novo. *See State ex rel. King v. UU Bar Ranch Ltd. P'ship.*, 2009-NMSC-010, ¶ 20, 145 N.M. 769, 205 P.3d 816 (stating that review of "[w]hether law of the case applies, as well as how it applies, are questions of law subject to de novo review").

**{20}** The doctrine of "law of the case . . . relates to litigation of the same issue recurring within the same suit." *Cordova v. Larsen*, 2004-NMCA-087, ¶ 10, 136 N.M. 87, 94 P.3d 830. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes a binding precedent in successive stages of the same litigation." *Id.* (internal quotation marks and citation omitted). It is based on "a matter of precedent and policy; it is a determination that, in the interests of the parties and judicial economy, once a particular issue in a case is settled it should remain settled." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 40, 125 N.M. 721, 965 P.2d 305. The law of the case doctrine is "discretionary and flexible and is not a doctrine of inflexible law[.]" *King*, 2009-NMSC-010, ¶ 21 (internal quotation marks and citations omitted).

**{21}** In its memorandum opinion accompanying the partial lump sum order for payment of debts, the WCJ stated that the order "awarding partial lump sum does constitute the law of the case but that it does not preclude Worker from arguing about a change on maximum medical improvement status as long as that change is asserted more than six months after entry of the order." However, less than six months later, at the formal hearing, Worker argued that he was not at maximum medical improvement, and the WCJ agreed that Worker ceased to be at maximum medical improvement on December 22, 2011. Employer's argument is two-fold: first, Employer contends that the WCJ violated the WCJ's own determination on the law of the case because he miscalculated that six months had not passed between entry of the July 20, 2011 order and the December 22, 2011 formal hearing. Second, Employer contends that on a more general level, once the WCJ determined that Worker was at maximum medical improvement for purposes of granting the partial lump sum request, the determination becomes law of the case and is conclusively binding on the parties.

**{22}** We first address Employer's contention that the WCJ erred by not following his own ruling that Worker's maximum medical improvement determination was law of the case for the six months subsequent to the order. The WCJ determined that the Act requires that the maximum medical improvement determination remain the law of the case for six months because Section 52-1-56 mandates that hearings regarding the diminution, termination, or increase of benefits "shall not be held more frequently than at six-month intervals." However, the change in maximum medical improvement status resulted not from a hearing conducted pursuant to an application for modification based on Section 52-1-56, but instead from the evidence presented at the formal hearing on Worker's claims. We therefore decline to apply the law of the case doctrine to the determination that Worker's maximum medical improvement determination was law of the case for six months. *See Trujillo*, 1998-NMSC-031, ¶ 41 ("The application of the law-of-the-case doctrine . . . is discretionary and flexible; it will not be used to uphold a clearly incorrect decision[.]").

**{23}** Addressing Employer's more general contention that once the WCJ determined that Worker was at maximum medical improvement and issued the lump sum order, the maximum medical improvement determination became law of the case, we observe that "[a]lthough it would be grossly inefficient for district courts to review repeatedly their interlocutory rulings, the law-of-the-case doctrine does not prohibit the practice." *State ex rel. Udall v. Pub. Employees Ret. Bd.*, 118 N.M. 507, 510, 882 P.2d 548, 551 (Ct. App. 1994), *rev'd on other grounds by* 120 N.M. 786, 907 P.2d 190 (1995). For example, in *Bell v. N.M. Interstate Stream Comm'n*, 1996-NMCA-010, ¶¶ 12-17, 121 N.M. 328, 911 P.2d 222, this Court held that the law-of-the-case doctrine did not prevent a district court from overturning its previous interlocutory order denying summary judgment after remand on appeal. Applying this principle, the WCJ did not err by determining that the law-of-the-case doctrine did not apply. Based on the facts presented at the hearing, the WCJ determined that Worker was no longer at maximum medical improvement because Worker elected to have surgery on his injury. The law-of-the-case doctrine does not require the WCJ to ignore the facts before it at the time of the formal hearing based on a previous determination of maximum medical improvement contained in an interim order when the claims raised in Worker's complaint were still pending.

## CONCLUSION

**{24}** We hold that the WCJ did not err by determining that Worker had a change of condition for purposes of Section 52-5-9(B)(1) by electing to undergo surgery on his left testicle and determining that Worker was no longer at maximum medical improvement. We further hold that neither judicial estoppel nor the law-of-the-case doctrine bars Worker's change of position regarding whether he was no longer at maximum medical improvement at the time of his formal hearing despite the WCJ's finding that he was at maximum medical improvement at the time of the lump sum order. Accordingly, we affirm.

**{25}** **IT IS SO ORDERED.**

 

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Laughlin v. Convenient Mgmt. Servs., Inc.*, No. 32,074**

**APPEAL AND ERROR**

Standard of Review

**CIVIL PROCEDURE**
Estoppel
Law of the Case

**WORKERS COMPENSATION**
Disability, General
Disability, Partial
Lump Sum Payment
Medical Expenses
Medical Treatment