This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39472**

**JESUS PALACIOS,**

Worker-Appellant,

v.

**NEW MEXICO EXPO and NEW MEXICO GENERAL SERVICES DEPARTMENT RISK MANAGEMENT DIVISION,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Rachel A. Bayless, Workers' Compensation Judge**

Pizzonia Law, LLC
Lydia Pizzonia
Albuquerque, NM

for Appellant

Paul L. Civerolo, L.L.C.
Paul L. Civerolo
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Jesus Palacios (Worker) appeals an order from the Workers' Compensation Administration granting a motion for summary judgment in favor of his former employer New Mexico Expo and its insurer the State of New Mexico General Services Department, Risk Management Division (collectively, Employer). The Workers'

Compensation Judge's (WCJ) order was based on the conclusion that Worker's claim was time-barred. On appeal, Worker argues: (1) the WCJ erred in concluding that there was no genuine issue of material fact as to the existence of a "compensation order" in this case, and thus that the two-year statute of limitations found in NMSA 1978, Section 52-5-9(B) (1989) should have applied; (2) alternatively, the WCJ's finding that he was terminated from his employment with Employer was erroneous, and thus the one-year statute of limitations found in NMSA 1978, Section 52-1-31(A) (1987) should have been tolled; and (3) the WCJ's application of the one-year statute of limitations in Section 52-1-31(A) to this case was contrary to law. We affirm.

## BACKGROUND

**{2}** The following facts are undisputed. Worker suffered a workplace injury on June 8, 2015, and timely notified Employer in an appropriate manner pursuant to NMSA 1978, Section 52-1-29 (1990). Worker's supervisor contacted the insurer and the case was assigned to an adjuster, who accepted that Worker's injury was compensable and created a claim file. Following a shoulder surgery, Worker promptly began receiving disability benefits. The payment of these benefits continued even after Worker's date of maximum medical improvement following his surgery. However, there is no evidence in the record of any form of correspondence between Worker and Employer regarding the details of a benefit schedule. No document—formal or informal—explains to Worker the breakdown of his payment amounts, or any specifics regarding the payment of benefits. While the adjuster's claim notes indicate that she anticipated that Worker was entitled to 500 weeks of benefits for his nonscheduled injury, there is no evidence that Worker was ever informed of this anticipated benefit schedule. Moreover, the parties never mutually memorialized any of their respective expectations or understandings.

**{3}** Worker's final disability benefits check was issued on April 26, 2018, after around 151 weeks of payments. On October 9, 2019, Worker filed a formal complaint with the Workers' Compensation Administration, seeking, among other things, a "determination of what future benefits he is entitled to under the [Workers' Compensation] Act." The time between Worker's final benefits check and the filing of his complaint was approximately one year and five months.

**{4}** Employer moved for summary judgment based on the statute of limitations. The WCJ granted the motion, concluding that (1) Worker could not seek review under the two-year statute of limitations under Section 52-5-9 because Worker had failed to demonstrate a genuine issue of material fact as to the existence of a "compensation order" in this case; (2) there was no genuine issue of material fact as to whether Worker was terminated—thus rendering the tolling provision of Section 52-1-31(A) inapplicable; and (3) Worker's claim was subject to the generally applicable one-year statute of limitations under Section 52-1-31(A), and thus that his claim was time-barred. On appeal, Worker challenges all three conclusions.

## DISCUSSION

**{5}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Under this standard, we review legal questions de novo. *Id.* Because roughly a year and a half passed between Worker's final benefits check and the filing of his complaint, his success on appeal is entirely contingent on persuading this Court that the WCJ erred in finding that his claim was subject to the generally applicable one-year statute of limitations found in Section 52-1-31(A). Accordingly, we begin by considering both ways in which the law might have afforded Worker more than one year to file his claim: first, we discuss the potential application of the two-year statute of limitations in Section 52-5-9(B); and second, we discuss the tolling provision of Section 52-1-31(A). Because we agree with the WCJ that neither of these is applicable to this case, we then turn to an analysis of the one-year statute of limitations found in Section 52-1-31(A) and conclude that the WCJ correctly applied this statute to time-bar Worker's claim.

## I.  The WCJ Did Not Err in Concluding That No Compensation Order Exists in This Case, and Thus Section 52-5-9 Was Inapplicable

**{6}** Section 52-5-9(A) provides the mechanism by which a party to a "compensation order" can seek judicial review of that order. The statute states that a compensation order may be reviewed "at any time within two years after the date of the last payment or the denial of benefits" under any one of seven enumerated grounds. Section 52-5-9(B). Worker argues that some of these enumerated grounds are pertinent to his case, including: "mistake," "clerical error or mistake in mathematical calculations[,]" and "fraud, misrepresentation or other misconduct of an adverse party." Section 52-5-9(2), (3), (5). However, a threshold issue in determining the application of this statute is whether Worker can demonstrate the existence of a disputed issue of material fact as to whether there was a "compensation order." Here, the WCJ concluded that there was no such dispute and that Worker therefore could not seek review under Section 52-5-9.

**{7}** The term "compensation order" is referenced various times in the statutes regarding worker's compensation. In the pertinent statutes, the term refers to a document that is issued by a WCJ following formal litigation regarding a worker's compensation dispute. *See* NMSA 1978, § 52-5-7(B) (1993) (noting that, following litigation of a worker's claim, "[t]he decision of the [WCJ] shall be made in the form of a compensation order, appropriately titled to show its purpose and containing a report of the case, findings of fact and conclusions of law and, if appropriate, an order for the payment of benefits under the Workers' Compensation Act").[1] However, as Worker correctly points out, this Court has not adhered to a literal reading of the statutory language. *See, e.g.*, *Curliss v. B & C Auto Parts*, 1993-NMCA-139, ¶¶ 16-17, 116 N.M. 668, 866 P.2d 396 (accepting that a lump sum settlement qualifies as a "compensation

---

1Although the "[d]efinitions" section of the Worker's Compensation Act, *see* NMSA 1978, § 52-1-1.1 (2013), does not define the term "compensation order," NMSA 1978, Section 52-3-4(C) (1989) of the adjacent New Mexico Occupational Disease Disablement Law defines "compensation order" in its "[d]efinitions" section: "'compensation order' means a compensation order of the workers' compensation division issued by a [WCJ] pursuant to [NMSA 1978,] Section 52-5-7.

order" for the purposes of review under Section 52-5-9); *Norman v. Lockheed Eng'g & Sci. Co.,* 1991-NMCA-101, ¶¶ 4-16, 112 N.M. 618, 817 P.2d 1260 (recognizing that after the expiration of the statutory time period to accept or reject a recommended resolution issued by a mediator, the recommendation becomes binding and is therefore tantamount to a compensation order). Specifically, Worker relies on this Court's opinion in *Henington v. Technical Vocational Institute*, 2002-NMCA-025, 131 N.M. 655, 41 P.3d 923. In that case, an employer voluntarily paid benefits to a worker following an accidental workplace injury. *Id.* ¶¶ 3-9. The injury at issue in *Henington* was to the worker's knees—a scheduled injury under NMSA 1978, Section 52-1-43 (2003). *Henington*, 2002-NMCA-025, ¶ 3. As such, though the parties did not litigate the details of the benefits, they did agree to a specific impairment rating and for payments to be made for a specific time period. *Id.* ¶ 6. Later, when the worker's injury worsened, he sought increased compensation benefits under NMSA 1978, Section 52-1-56 (1989), which allows a WCJ to increase or decrease the benefits awarded under a compensation order upon a proper showing. *Id.* ¶ 9. The employer contended the claim for increased benefits was time-barred under Section 52-1-31(A). This Court disagreed and held that "[w]hen the parties have agreed to the payment of benefits at a specific amount, for a specific time, based on a specific disability and a specific percentage loss of use or impairment rating, that agreement satisfies the requirement of a compensation order for the purposes of Section 52-1-56."[2] *Henington*, 2002-NMCA-025, ¶ 17.

**{8}** Here, the WCJ distinguished *Henington* factually. The WCJ concluded that "Worker has failed to bring forward any evidence to create a genuine issue of material fact[] as to whether he and [the adjuster] negotiated, discussed, or otherwise reached an agreement or had a meeting of the minds that Worker would receive indemnity benefits under specific terms that could form a 'compensation order.'" In support of this conclusion, the WCJ explained that the witness who testified regarding her interpretation of the adjuster's claims note entries acknowledged that she did not know whether there was an agreement, and that Worker did not testify that he understood that the benefits he received were pursuant to an agreement between him and the adjuster.

**{9}** Worker contends that the WCJ made a legal error by equating *Henington*'s "agreement" requirement with a requirement that there be a "meeting of the minds." We are not persuaded. Importantly, the WCJ's understanding of "agreement" is consistent with a leading legal definition of that word: a "mutual understanding between two or more persons about their relative rights and duties regarding past or future performances." *Agreement*, *Black's Law Dictionary* (11th ed. 2019). Under this definition, we agree with the WCJ that, unlike in *Henington*, Worker in this case did not

---

2Although this Court in *Henington* specifically referenced only Section 52-1-56 in this passage, it later analogized Section 52-1-56 with Section 52-5-9. *See Henington*, 2002-NMCA-025, ¶ 16 ("Our interpretation of Section 52-1-56 is supported by our interpretation of similar language used in Section 52-5-9(B), the statute discussing grounds for modifications of compensation orders. Section 52-5-9, like Section 52-1-56, refers specifically to modification of a 'compensation order.'").

present evidence that he and Employer had a *mutual* understanding regarding a specific amount for the payment of Worker's benefits for a specific time period.

{10} Nevertheless, Worker argues on appeal that an "agreement" under *Henington* is fulfilled simply when an adjuster "agrees" that a worker's claim is compensable, and "agrees" to make payments. Under this interpretation, a mutual understanding between worker and employer regarding relative rights and duties is not required: an "agreement" simply refers to an affirmative voluntary act of an employer. Although Worker offers this interpretation, he has not carried his burden of persuading us that the WCJ's interpretation is erroneous. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("Appellant must affirmatively demonstrate its assertion of error."). Worker does not explain why his interpretation of the word "agreement" in *Henington* is more consistent with the text or rationale of *Henington*, and we decline to develop such an argument on his behalf. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Worker's argument is that the WCJ's "meeting of the minds" interpretation is erroneous because it conflicts with our precedents in which a recommended resolution issued by a mediator becomes a "compensation order" if the parties fail to formally accept or reject it within the statutory time period. *See, e.g.*, *Norman*, 1991-NMCA-101, ¶¶ 4-16. Worker contends that these precedents establish that "a meeting of the minds is not required to establish the existence of a compensation order." However, as this Court recognized in *Fasso v. Sierra Healthcare Ctr.*, 1994-NMCA-170, 119 N.M. 132, 888 P.2d 1014, *overruled on other grounds by Hidalgo v. Ribble Contracting*, 2008-NMSC-028, ¶ 22, 144 N.M. 117, 184 P.3d 429—the case relied upon by Worker—failures to timely respond to recommended resolutions result in compensation orders that arise "by operation of law" pursuant to statute. *Fasso*, 1994-NMCA-170, ¶ 9. Here, Worker does not argue that his alleged compensation order arose by operation of law, and we see nothing in *Fasso* that supports Worker's proposed definition of "agreement." Therefore, Worker has not met his burden of showing that the WCJ erred in concluding that there was no genuine issue of material fact as to whether a compensation order existed.

## II. The WCJ Did Not Err in Concluding That the Tolling Provision of Section 52-1-31(A) Was Inapplicable

{11} Worker next argues that even if Section 52-5-9 does not apply and Section 52-1-31(A) governs his case, his claim was still timely because Section 52-1-31(A) contains an applicable tolling provision. Section 52-1-31(A) provides, in pertinent part:

> If an employer or his insurer fails or refuses to pay a worker any installment of compensation to which the worker is entitled under the Workers' Compensation Act, after notice has been given as required by Section 52-1-29 . . ., it is the duty of the worker insisting on the payment of compensation to file a claim therefor as provided in the Workers' Compensation Act not later than one year after the failure or refusal of the employer or insurer to pay compensation. This one-year period of limitations *shall be tolled during the time a worker remains employed by*

*the employer by whom he was employed at the time of such accidental injury*, not to exceed a period of one year.

(Emphasis added.) Worker argues that a genuine issue of material fact existed as to whether he "remain[ed] employed by the employer by whom he was employed at the time of [his] accidental injury," *id.*, and thus the statute of limitations should be tolled to allow his claim. As such, Worker argues that the WCJ erred in granting Employer's motion for summary judgment on this ground. We are not persuaded.

{12} As a preliminary matter, to determine whether Worker remained employed by Employer at the time he filed his claim, we must assess the nature of his employment status. There is no dispute that, technically speaking, Worker's employment for Employer was always in a "temporary" capacity. Over the entire course of his time working for Employer, Worker would work roughly forty-hour weeks for a stated period of six months, at the end of which he would be given a "break in service" or terminated, and then rehired two weeks later for another period of six months. Worker testified in his deposition that he understood that he was a "temporary or seasonal" worker, and that he filled out "a new application" each time he was rehired for a new six-month period of work. Worker put into the record sixteen "Temporary/Seasonal Worker Personnel Action Notice[s]," which document Employer's practice of six-month hiring, followed by a break in service and then rehiring two weeks later. The last Personnel Action Notice in the record shows that Worker was last rehired for a period of six months starting on November 26, 2015. Following this final six-month rehire, there is nothing in the record to indicate that Worker was given a "break in service," terminated, or rehired subsequently. Moreover, Worker never returned to work after his injury, and there is no indication of contact between Worker and Employer about returning to work.

{13} Nevertheless, Worker contends that a genuine issue of material fact existed as to his employment status because the "rehiring practice of Employer was so systematic and routine, it demanded distinct notice to Worker to constitute termination, as does the administrative code." Moreover, Worker argues that although Worker testified that he filled out a "new application" each time he was rehired, those documents are not found in the record and thus the WCJ's reliance on Worker's statements was erroneous. We consider these arguments in turn.

{14} First, to support his "distinct notice" argument, Worker points to a State Personnel Board regulation which provides: "[E]mployees in emergency or temporary status may be suspended, demoted, or dismissed effective immediately with written notice and without right of appeal to the board. The written notice shall advise the employee of the conduct, actions, or omissions which resulted in the suspension, demotion, or dismissal." 1.7.11.11 NMAC. Worker contends that, pursuant to this regulation, because Employer did not provide "written notice," Worker therefore remained employed with Employer even after his final six-month rehire had run. Regardless of whether we were to accept the causal structure of this contention, Worker's argument fails at the first hurdle: our reading of the quoted regulation indicates that no "written notice" was required under the facts of this case. As the plain language

of the regulation shows, 1.7.11.11 NMAC mandates that employers give written notice to temporary employees whose employment is cut short due to some form of discipline—i.e., an action related to some "conduct, actions, or omissions." *See State v. Hobbs*, 2016-NMCA-022, ¶ 9, 366 P.3d 304 (explaining that we interpret regulations using our principles of statutory interpretation, beginning with plain language). Here, Worker's six-month term of temporary employment simply ended after six months passed, and so the regulation's "written notice" requirement does not apply. Moreover, although Worker appears to suggest that the stability of his employment for large parts of the year renders him a quasi-permanent employee (and thus entitled to different notice-of-termination requirements), he cites no authority to support this tentative claim, and we have found none. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{15}**   Next, Worker argues that although Worker referenced "new application[s]" for rehire in his deposition testimony, these documents are not found in the record and thus the WCJ's reliance on Worker's statements was erroneous. Worker has not persuaded us that the WCJ erred. As we read the order, the WCJ considered Worker's testimony in the context of all the other evidence that tended to show that Worker's employment status was temporary, and that he was routinely rehired after breaks in employment after six months.

**{16}**   Finally, we note that although it appears that no "break in service" notice was filed following Worker's final "rehire" on November 26, 2015, we know of no authority, and Worker has cited none, that indicates that a six-month period of employment is automatically extended—perhaps perpetually—in the absence of notice of "break in service" on the part of an employer. *See Curry*, 2014-NMCA-031, ¶ 28. In short, we believe that even construing the evidence in the manner most favorable to Worker, his last six-month period of work for Employer would have ended on May 26, 2016, and no evidence indicates he would have been employed by Employer at any time beyond this date. As such, he was not employed by Employer at any time that would trigger Section 52-1-31(A)'s tolling provision. Consequently, the WCJ did not err in concluding that there was no genuine issue of material fact as to this question.

### III.      The WCJ's Application of the One-Year Statute of Limitations of Section 52-1-31(A) Was Not Contrary to Law

**{17}**   We now address Worker's contention that the WCJ erroneously applied Section 52-1-31(A), the statute of limitations for disability benefits. *See Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 23, 117 N.M. 727, 876 P.2d 656 (noting that "Section 52-1-31(A) is unquestionably a statute of limitations for claims for disability benefits"). Section 52-1-31(A) provides that it is a worker's "duty" to file a claim within one year "[i]f an employer or his insurer fails or refuses to pay a worker any installment of compensation to which the worker is entitled." Worker contends—citing *Henington*—that "it is well settled that Section 52-1-31(A) applies only to initial claims for compensation." 2002-NMCA-025, ¶ 24. Worker argues that his claim is not an initial claim for

compensation, but rather a "determination of *future benefits* pursuant to . . . Section 52-5-9."

**{18}** As we explained above, Section 52-5-9 does not apply to this case. And, as we now explain, although Worker's October 9, 2019, complaint does not appear to be "initial" in the colloquial sense because Worker had already received benefits for approximately 151 weeks, in the context of Section 52-1-31(A), the complaint was, in fact, an "initial claim[] for compensation." *Henington*, 2002-NMCA-025, ¶ 24. Worker's claim is therefore time-barred under the statute.

**{19}** The confusion here stems from a misunderstanding regarding the meaning of the term "claim" in the statute. We recognize that there is intuitive appeal to the notion that payment of disability benefits must always follow some kind of "claim," and accordingly that Worker's receipt of benefits for nearly three years would be a strong indication that his October 9, 2019, complaint cannot be his "initial claim[] for compensation." *Henington,* 2002-NMCA-025, ¶ 24. But this line of thinking erroneously conflates the terms "claim" and "notice." As our Supreme Court has stated, the plain language of Section 52-1-31(A) requires "both notice to an employer of an accident *and* the timely filing of a claim." *Torres v. Plastech Corp.*, 1997-NMSC-053, ¶ 10, 124 N.M. 197, 947 P.2d 154; *see* § 52-1-31(A) ("If an employer or his insurer fails or refuses to pay a worker any installment of compensation to which the worker is entitled under the Workers' Compensation Act, after *notice* has been given as required by Section 52-1-29 . . ., it is the duty of the worker insisting on the payment of compensation to *file a claim* therefor as provided in the Workers' Compensation Act not later than one year after the failure or refusal of the employer or insurer to pay compensation." (emphasis added)). Giving "notice" and filing a "claim" are different acts, both of which are required by the statute. Here, all that Worker did before receiving benefits was give notice. Because the benefits were thereafter paid, Worker did not file any claim with the Workers' Compensation Administration until October 9, 2019—roughly six months after the statute of limitations for that claim expired.

**{20}** We believe Section 52-1-31(A) applies to the facts of this case as follows. Shortly after his injury in June 2015, Worker gave Employer *notice* "as required by Section 52-1-29." Section 52-1-31(A). Then, although no *claim* was filed, Employer began paying Worker disability benefits. After 151 weeks, the benefits ceased, with the final check coming to Worker in late April or early May of 2018. At this moment, Employer "fail[ed] or refuse[d] to pay [W]orker any installment of compensation to which the worker [was] entitled under the Workers' Compensation Act." *Id.* As such, from that moment, Worker had one year to file his claim, lest it be "forever barred." *Id.* Because Worker's claim was indisputably filed after the one-year deadline (and the statute was not tolled), his claim is barred. Accordingly, the WCJ did not err in applying the one-year statute of limitations of Section 52-1-31(A) to this case.

**CONCLUSION**

**{21}** We affirm.

{22}    IT IS SO ORDERED.

ZACHARY A. IVES, Judge

WE CONCUR:

KRISTINA BOGARDUS, Judge

SHAMMARA H. HENDERSON, Judge